Affirmed and Memorandum Opinion filed December 3,
2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00374-CR

____________

 

RIVIS BYRD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 339th
District Court

Harris County, Texas

Trial Court Cause No. 1070798

 



 

M E M O R A N D U M  O P I N I O N

A jury convicted appellant Rivis Byrd of
aggravated sexual assault, and the trial court assessed punishment at 30 years= confinement.  In
six issues, appellant challenges (1) the legal and factual sufficiency of the
evidence, (2) the pretrial and in-court identifications, and (3) the trial
court=s denial of his
motion for new trial based on allegations of ineffective assistance of counsel
at the guilt/innocence and punishment phases.  We affirm.








I.  Factual
Background

In the early morning hours of April 23,
2006, as the complainant was getting in her vehicle at her apartment complex,
she saw a gun at her window.  Two men were standing beside her car.  The man
with the gun asked for her purse and threw it to the other man.  At trial, the
complainant identified appellant as the man with the gun.  The complainant
testified that appellant ordered her out of the vehicle and pushed her to the
wall.  She stated that appellant told her to take off her shirt or he would
shoot her.  According to her testimony, appellant then forced her down and
demanded oral sex.  After a minute or less, appellant asked her where she
lived.  With the gun at the back of her head, she walked to her apartment and
into her bedroom.  The complainant testified that her bedroom light was on. 

According to the complainant=s testimony,
appellant told her to take off her pants, pushed her to the bed, took off his
pants, and put his penis in her vagina.  She stated that the gun was pointed at
her head during this time.  She testified that when she tried to move,
appellant told her he was going to shoot.  She stated that the other male was
knocking on the door, asking for the gun.  The complainant=s mother testified
to hearing a man=s voice inside the apartment.  When the
complainant=s mother opened her bedroom door, she saw a man
standing in the house and heard another man=s voice inside her
daughter=s room.  She
knocked on her daughter=s bedroom door, and the man came out and
ran.  The complainant called the police.  Her purse was still at her home, but
money was taken from it. 








Officer Fabian Lee was dispatched to the
scene at 6:19 a.m.  He testified that the complainant initially Awas an emotional
wreck.@  The complainant
told Officer Lee that her assailant was Aapproximately
between the ages of 18 and 21, maybe 5 feet, 9 inches to 5 feet, 11 inches in
height, and approximately maybe 150 to 160 pounds.@  She described
him as a black male with a dark complexion and no facial hair.  On April 26,
2006, Officer Scott Girard detained appellant two blocks from where the assault
took place and removed a BB gun from appellant=s waist.  At
trial, the complainant identified the gun as the same or similar to the one
used in the assault. 

Officer David Garcia assembled a lineup on
April 27, 2006.  He testified that the lineup was not based on the complainant=s description. 
Three weeks after the assault, the complainant viewed a videotape of the
lineup.  The lineup consisted of five African-American males in civilian
clothing.  Officer Pedro Moreno, who showed the complainant the videotape,
testified that the complainant selected appellant from the lineup without
hesitation.  At trial, the complainant testified she had no doubt that
appellant was her assailant when she looked at the video lineup.  After viewing
the lineup, the complainant wrote a sworn statement describing the person who
assaulted her. 

Appellant=s mother testified
at trial on appellant=s behalf.  She stated that she and
appellant fell asleep in the living room around 3 a.m. on April 23, 2006.  She
stated that she woke up at 5 a.m. to begin her morning routine and saw
appellant asleep on the living-room floor.  She testified that she took her dog
for a 15-20 minute walk around 5:45 a.m.  When she returned from walking the
dog, appellant was still asleep.  She testified that she watched television in
the same room where appellant was sleeping until 7 a.m.  She went to the
kitchen, got some things out for dinner that night, and then went back to bed. 
Appellant=s mother stated that she and appellant left the house
around 4 or 5 p.m. to go to a park.

Appellant was convicted by a jury of
aggravated sexual assault.  At the beginning of the punishment phase, appellant
pleaded guilty to an unrelated robbery that occurred on April 26, 2006, and the
trial court sentenced him to two years= imprisonment
pursuant to a plea agreement.  After testimony from the victim of the robbery,
the complainant in the sexual-assault case, and appellant=s relatives, the
trial court sentenced appellant to thirty years= imprisonment for
the aggravated sexual assault.  Appellant filed a motion for new trial alleging
he received ineffective assistance of counsel.  After a hearing, the trial court
denied the motion.








II.  Analysis

A.      Pretrial and In-Court
Identification

In his third issue, appellant argues that
the trial court erred by admitting the complainant=s in-court
identification because the in-court identification was tainted by an
impermissibly suggestive pretrial lineup. 

In reviewing the trial court=s decision on the
admissibility of identification evidence, we give almost total deference to the
trial court=s determination of the facts, especially when the
trial court=s findings are based on an evaluation of credibility
and demeanor.  Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997)).  The same amount of deference is given to mixed questions of law
and fact if the resolution of those ultimate questions turns on an examination
of credibility and demeanor of the witnesses.  Id.  However, we review
de novo mixed questions of fact and law that do not turn on an evaluation of
credibility and demeanor.  Id.  In this case, the question of whether a
pretrial identification procedure was impermissibly suggestive is a mixed
question of law and fact that does not turn on an evaluation of credibility and
demeanor.  See id. at 773.  Accordingly, we apply a de novo standard of
review.  Id.

In reviewing the trial court=s ruling, we
generally consider only the evidence adduced at the suppression hearing.  See
Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).  However,
when the parties later relitigate the suppression issue at the trial on the
merits, we consider all evidence, from both the pretrial hearing and the trial,
in our review of the trial court=s determination.  Id. 
Here, the trial court held a hearing on appellant=s motion to
suppress and denied the motion at the conclusion of the hearing.  At trial, the
parties relitigated the pretrial identification issue.  Therefore, we will
consider the evidence presented at both the suppression hearing and the trial. 








An in-court identification is inadmissible
if tainted by an impermissibly suggestive pretrial identification.  See id.
at 771B72.  In
determining whether the trial court was correct in admitting an in-court
identification, we employ a two-step analysis: (1) we first examine whether the
out-of-court identification procedure was impermissibly suggestive and (2) if
so, we examine the totality of the circumstances to determine whether the
impermissibly suggestive procedure gave rise to the substantial likelihood of
irreparable misidentification.  Barley v. State, 906 S.W.2d 27, 33 (Tex.
Crim. App. 1995).  The defendant has the burden to show by clear and convincing
evidence that the pretrial identification procedure was impermissibly
suggestive and that the in-court identification is unreliable.  Id. at
33B34. 

Under the first step of the analysis, we
evaluate the pretrial lineup itself to determine whether it was impermissibly
or unduly suggestive.  AA lineup is considered unduly suggestive
if other participants are greatly dissimilar in appearance from the suspect.@  Withers v.
State, 902 S.W.2d 122, 125 (Tex. App.CHouston [1st
Dist.] 1995, pet. ref=d) (citing United States v. Wade,
388 U.S. 218, 232B33, 87 S. Ct. 1926, 18 L. Ed. 2d 1149
(1967)).  A suspect may be greatly dissimilar in appearance from the other
participants because of his distinctly different appearance, race, hair color,
height, or age.  See id.  However, minor discrepancies among line-up
participants will not render a line-up impermissibly suggestive.  See id. 
The participants in a line-up do not have to be identical to satisfy the
requirements of due process.  See Buxton v. State, 699 S.W.2d 212, 216
(Tex. Crim. App. 1985). 








Appellant contends the video lineup was
impermissibly suggestive because (1) appellant was the only dark-complected
person in the lineup, (2) one of the lineup participants standing next to
appellant was considerably shorter than appellant and wearing a red shirt, and
(3) another lineup participant had a heavier build than appellant.  During the
suppression hearing, Officer Garcia testified that the lineup was composed of
five African-American males with the same color hair wearing civilian
clothing.  When viewing the video recording of the lineup, one can see that one
of the lineup participants is much shorter than the other participants and
wearing a red shirt and another lineup participant has a heavier build than the
others.  The participants range in shades of complexion, and appellant is not
noticeably darker complected than all of the other participants.  Despite any
dissimilarities, all are African-American males, in civilian clothes, with
similar facial hair and similar facial features, and of similar age.  There was
nothing about the lineup that singled out appellant or drew particular
attention to him.

We conclude appellant has not demonstrated
by clear and convincing evidence that the lineup was impermissibly suggestive. 
See Buxton, 699 S.W.2d at 216 (finding lineup not unduly suggestive
where there was weight range of forty pounds, height range of five inches, some
lineup participants had on bright shirts, and three of six had dark skin tone);
Cienfuegos v. State, 113 S.W.3d 481, 491 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d) (holding lineup was not impermissibly
suggestive where participants had similar facial hair, all were Hispanic, wore
civilian clothes, were of similar age, height and build, with the exception of
one participant who was obviously older and shorter than the others).

Furthermore, even if appellant met his
burden of showing the video-lineup procedure was impermissibly suggestive,
appellant has not met his burden of showing the video-lineup procedure gave
rise to a very substantial likelihood of irreparable misidentification.








Under the second step, we examine the
totality of the circumstances to determine whether the impermissibly suggestive
procedure gave rise to the substantial likelihood of irreparable
misidentification.  Jackson v. State, 657 S.W.2d 123, 127 (Tex. Crim.
App. 1983).  In assessing reliability under the totality of the circumstances,
the following five non-exclusive factors should be weighed against the
corrupting effect of any suggestive identification procedure: (1) the
opportunity of the witness to view the criminal at the time of the crime, (2)
the witness=s degree of attention, (3) the accuracy of the witness=s prior
description of the criminal, (4) the level of certainty demonstrated by the
witness at the confrontation, and (5) the length of time between the crime and
the confrontation.  Neil v. Biggers, 409 U.S. 188, 199B200, 93 S. Ct.
375, 34 L. Ed. 2d 401 (1972); Ibarra v. State, 11 S.W.3d 189, 195 (Tex.
Crim. App. 1999).  Because the five Biggers factors are all issues of
historical fact, we must consider them deferentially in a light favorable to
the trial court=s ruling.  Ibarra, 11 S.W.3d at
195.  The factors, viewed in this light, must then be weighed de novo against Athe corrupting
effect@ of the suggestive
pretrial identification procedure.  Id. at 195-96.  

The complainant testified at the
suppression hearing that she had the opportunity to view her assailant inside
her bedroom, her bedroom light was on, his face was a couple of inches from
hers, and she got a good look at his face.  She identified appellant as the
person who sexually assaulted her and stated she was basing her in-court
identification on who she saw on the date she was assaulted. At trial, the
complainant also testified that she got a good look at her assailant=s face outside by
her car.[1] 
She identified appellant as the man with the gun and again as the man she
identified in the video lineup.  In terms of degree of attention, a witness who
is also a victim has a greater degree of attention than a casual bystander.  See
Cantu v. State, 738 S.W.2d 249, 253 (Tex. Crim. App. 1987).   








At the suppression hearing, the
complainant testified that she gave the responding officer a general
description of her assailantCtall, thin, and dark-complected with short
black hair and a New Orleans accent.  However, according to the responding
officer=s testimony at
trial, the complainant=s description was much more detailed.  She
told him her assailant was a dark-complected African-American male between the
ages of approximately eighteen and twenty-one, possibly five feet, nine inches
to five feet, eleven inches in height, and approximately 150 to 160 pounds with
no facial hair.  Appellant is a dark-complected African-American male.  He was
seventeen at the time of the incident and, in viewing the video lineup, he
appears to be slightly over six feet tall.  The testimony at trial did not
indicate exactly how much appellant weighed at the time of the incident. 
Appellant had facial hair in the video lineup, which was assembled four days
after the incident; however, as Officer Lee testified, facial hair can be grown
or removed.  While the testimony at trial indicates appellant does not have a
New Orleans accent, the video lineup gave no indication of accent because the
lineup participants were not asked to speak.  Finally, appellant contends the
complainant did not identify the scars on appellant=s face and arm;
however, at trial, appellant=s mother testified that the scars on
appellant=s face are small and the burn mark on his arm is
visible, but dark. 

The lineup was not assembled based on the
complainant=s description, but was at the request of another
police division.  The officer who showed the complainant the video lineup
testified that the complainant did not hesitate in her identification of
appellant.  The complainant also testified that when she looked at the video
lineup, she had no doubt appellant was the person who sexually assaulted her.

Finally, the assault took place on April
23, 2006, the complainant viewed the video lineup and identified appellant on
May 15, 2006, and the in-court identification at the suppression hearing
occurred on March 10, 2008.  We do not find this interval of sufficient
duration to automatically assume the complainant=s memory had
faded.  Delk v. State, 855 S.W.2d 700, 707 (Tex. Crim. App. 1993)
(concluding eighteen-month time span between robbery and in-court
identification did not undermine reliability because witness remembered details
and provided consistent testimony); Brown v. State, 29 S.W.3d 251, 256
(Tex. App.CHouston [14th Dist.] 2000, no pet.) (stating
sixty-seven days between burglary and lineup identification not of sufficient
duration to automatically assume victim=s memory had
faded).          








Under the totality of the circumstances,
we conclude the video-lineup procedure did not give rise to a substantial
likelihood of irreparable misidentification.  As such, the trial court did not
err in admitting the in-court identification.  Accordingly, appellant=s third issue is
overruled.

B.      Legal and Factual Sufficiency

In issues one and two, appellant contends
the evidence is both legally and factually insufficient to support his
conviction.  

1.       Legal sufficiency

Appellant contends the evidence is legally
insufficient to show appellant committed the offense because (1) there was no
fingerprint or DNA evidence, (2) the complainant=s testimony lacked
credibility, (3) appellant=s mother testified that appellant was
asleep in her apartment when the incident occurred, and (4) an expert witness
for the defense testified about a study conducted by the Department of Justice
discrediting eyewitness identification. 

In reviewing a legal sufficiency
challenge, we view the evidence in the light most favorable to the verdict and
determine whether a rational trier of fact could have found the essential
elements of a crime beyond a reasonable doubt.  Salinas v. State, 163
S.W.3d 734, 737 (Tex. Crim. App. 2005).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to
believe or disbelieve any portion of the testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).  The jury may also draw reasonable
inferences from basic facts to ultimate facts.  Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996).  When faced with conflicting evidence,
we presume the trier of fact resolved conflicts in favor of the prevailing
party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).








A person commits the offense of aggravated
sexual assault if the person Aintentionally or knowingly causes the
penetration of the . . . sexual organ of another person by any means, without
that person=s consent . . . and if the person by acts or words
places the victim in fear that . . . serious bodily injury . . . will be
imminently inflicted on any person.@  Tex. Penal Code Ann. '
22.021(a)(1)(A)(i), (a)(2)(A)(ii) (Vernon Supp. 2008).  A conviction under
Texas Penal Code section 22.021 is supportable on the uncorroborated testimony
of the victim of the sexual offense if the victim informed any person, other
than the defendant, of the alleged offense within one year after the date on
which the offense is alleged to have occurred.  Tex. Code Crim. Proc. art. 38.07(a) (Vernon 2005).  Here, the
complainant contacted the police right after the incident took place.  The
testimony of a victim, standing alone, is sufficient to support a conviction
for sexual assault.  Cruz v. State, 238 S.W.3d 389, 395 (Tex. App.CHouston [1st
Dist.] 2007, pet. ref=d); Jensen v. State, 66 S.W.3d 528,
534 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d). 

Furthermore, the jury heard the
complainant=s testimony and weighed her credibility and any
inconsistencies in her testimony.  See Fuentes, 991 S.W.2d at 271.  The
jury also heard the defense witnesses= testimony and
weighed their credibility.  Id.  The jury could have accepted or rejected
any or all of the evidence on either side.  Sharp, 707 S.W.2d at 614.

Viewed in the light most favorable to the
verdict, the complainant=s testimony was sufficient to establish
the elements of the offense of aggravated sexual assault.  Therefore, we
overrule appellant=s first issue.  

2.       Factual sufficiency

Appellant contends the evidence is
factually insufficient because (1) the video lineup was suggestive as appellant
was the only dark-complected person in the lineup, (2) there was no DNA,
fingerprint, or medical evidence introduced at trial, and (3) the complainant
lacked credibility. 








In evaluating the factual sufficiency of
the evidence, we view all the evidence in a neutral light and will set aside
the verdict only if we are able to say, with some objective basis in the
record, that the conviction is clearly wrong or manifestly unjust because the
great weight and preponderance of the evidence contradicts the jury=s verdict. 
Watson v. State, 204 S.W.3d 404, 414B17 (Tex. Crim.
App. 2006).  Evidence can be factually insufficient in one of two ways: (1)
when the evidence supporting the verdict is so weak that the verdict seems
clearly wrong and manifestly unjust and (2) when the supporting evidence is
outweighed by the great weight and preponderance of the contrary evidence so as
to render the verdict clearly wrong and manifestly unjust.  Grotti v. State,
273 S.W.3d 273, 283 (Tex. Crim. App. 2008).  We cannot declare that a conflict
in the evidence justifies a new trial simply because we disagree with the jury=s resolution of
that conflict.  See Watson, 204 S.W.3d at 417.  We afford almost
complete deference to a jury=s decision that is based upon an
evaluation of credibility.  Lancon v. State, 253 S.W.3d 699, 705 (Tex.
Crim. App. 2008).  In our review, we discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  If we determine the
evidence is factually insufficient, we must explain in exactly what way we
perceive the conflicting evidence to greatly preponderate against conviction.  Watson,
204 S.W.3d at 414.








First, the video lineup was not
impermissibly suggestive, as we have previously discussed.  While the
participants range in shades of complexion, appellant is not noticeably darker
than the other participants.  Second, there is no specific legal requirement of
physical evidence linking a defendant to an offense.  See Lancon, 253
S.W.3d at 706B07 (lack of physical evidence alone was not
dispositive in factual-sufficiency review when witness testimony was available
for the jury=s consideration).  In addition, witnesses testified
why there was no DNA or fingerprint evidence.  The complainant testified that
she did not think appellant ejaculated.  Officer Lee testified to the lack of
fingerprint evidence.  He stated he was looking for possible prints on the
vehicle, but because the vehicle was wet, he was not able to obtain a
fingerprint.  He testified that he did not attempt to take fingerprints from
the purse or from inside the house. 

Third, appellant argues the complainant=s testimony was
not credible because (a) she told police her assailant had a New Orleans accent
and, after identifying appellant, stated he might have been faking the accent,
(b) she did not identify marks on her assailant=s arms or face and
appellant has scars, (c) she testified that there was a light on in her room,
but did not tell police this fact, (d) she did not provide the responding
officer with a description of her assailant=s facial features,
and (e) she described her assailant as between the ages of eighteen and
twenty-one and appellant was seventeen at the time.  These arguments go to the
weight and credibility of the complainant=s testimony.  The
jury is the sole judge of the credibility of the witnesses and the weight to be
given their testimony.  See Lancon, 253 S.W.3d at 705, 707.  We afford
almost complete deference to a jury=s decision that is
based upon an evaluation of credibility.  Id. at 705.  The jury is in
the best position to judge the credibility of a witness because it is present
to hear the testimony.  Id.  

Here, the complainant positively
identified appellant as the perpetrator both in the video lineup and in court
and did not waiver in her identification of appellant.  She stated that she got
a good look at appellant=s face outside her vehicle and inside her
bedroom.  The complainant testified that she did not tell police about the
light being on in her bedroom because she was not asked.  She also testified
that she was not looking for scars, but she saw the person in front of her
during the assault.  Although there was no fingerprint, DNA, or other physical
evidence linking appellant to the crime, there was other circumstantial
evidence.  Officer Girard testified that he came into contact with appellant on
April 26, 2006, three days after the sexual assault, two blocks from where the
assault took place.  He removed a BB gun from appellant=s waist.  Officer
Girard stated that the BB gun looked like a real gun.  The complainant
identified the gun at trial as the same or similar to the one used during the
assault.








Appellant also argues the verdict is
against the great weight and preponderance of the evidence because his mother
testified that appellant spent the night at her apartment and was asleep at the
time of the incident, and the defense=s expert witness
testified about a research paper that questioned the reliability of eyewitness
identification.  The jury could have chosen to believe some testimony and
disbelieve other testimony.  Lancon, 253 S.W.3d at 707.  Here, the jury
could have believed the complainant=s testimony and
not the testimony of appellant=s mother or the defense=s expert witness.

Viewing the evidence in a neutral light,
and with appropriate deference to the jury=s credibility
determinations, we conclude the evidence supporting the verdict is not too weak
to support the jury=s finding on guilt beyond a reasonable
doubt and the weight of the evidence contrary to the verdict is not so strong
that the State could not have met its burden of proof.  Therefore, we overrule
appellant=s second issue.

C.      Ineffective Assistance of Counsel

In his fourth issue, appellant contends he
was denied effective assistance of counsel at the guilt/innocence phase because
his trial counsel failed to adequately explain his right to testify. 
Specifically, appellant argues his attorney did not explain how to avoid
evidence of his extraneous offenses in the event he chose to testify.  In his
fifth issue, appellant contends he was denied effective assistance of counsel
at the punishment phase because trial counsel (1) suggested he admit his guilt
to receive a lighter sentence and (2) failed to file a sworn application for
probation.  In his sixth issue, appellant contends the trial court abused its
discretion by denying his motion for new trial because he received ineffective
assistance of counsel. 








We review claims of ineffective assistance
of counsel under the standard set forth in Strickland v. Washington, 466
U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under Strickland,
an appellant must establish that (1) his trial counsel=s representation
was deficient and (2) the deficient performance was so serious that it deprived
the appellant of a fair trial.  Id. at 687.  To establish these prongs,
the appellant must prove by a preponderance of the evidence that counsel=s representation
fell below the objective standard of prevailing professional norms, and there
is a reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  See id. at 690B94.  A reasonable
probability is one sufficient to undermine confidence in the outcome of the
trial.  Id. at 694; Ex parte Ellis, 233 S.W.3d 324, 330B31 (Tex. Crim.
App. 2007).  

This test is applied to claims arising
under the Texas Constitution as well as those arising under the United States
Constitution.  Hernandez v. State, 726 S.W.2d 53, 56B57 (Tex. Crim.
App. 1986).  When, as here, a defendant asserts ineffective assistance of
counsel in a motion for new trial, we review the trial court=s denial of the
motion for abuse of discretion.  Charles v. State, 146 S.W.3d 204, 208
(Tex. Crim. App. 2004).  Therefore, we will reverse only if, viewing the
evidence in the light most favorable to the trial court=s ruling, the
court=s decision was
arbitrary or unreasonable.  Webb v. State, 232 S.W.3d 109, 112 (Tex.
Crim. App. 2007).

1.  Guilt/Innocence Phase

Appellant claims he was denied effective
assistance of counsel at the guilt/innocence phase because trial counsel failed
to adequately explain appellant=s right to testify. Specifically,
appellant argues if he had known how to avoid opening the door to evidence of his
extraneous offenses, he would have testified.








The record shows that trial counsel
informed appellant of his right to testify, appellant was aware that his
extraneous offenses could come into evidence if he chose to testify, and
appellant made the decision not to testify.  Trial counsel testified at the
hearing on the motion for new trial that he felt strategically it was the best
move for appellant not to testify, in part, because the extraneous offenses and
a prior statement could have come into evidence.  While appellant suggests the
evidence would have come in had he Aopened the door@ with a statement
about pending charges or a prior arrest, it is also possible the evidence could
have come in on the issue of identification.  Page v. State, 137 S.W.3d
75, 78B79 (Tex. Crim.
App. 2004) (stating Texas Rule of Evidence 404(b) permits introduction of
extraneous offenses that are relevant to issue of identity).

The trial court did not abuse its
discretion in finding that appellant did not prove by a preponderance of the
evidence that counsel=s representation fell below the objective
standard of prevailing professional norms.  In addition, appellant did not show
there was a reasonable probability that, but for counsel=s alleged deficiency,
the result of the proceeding would have been different. 

2.  Punishment Phase

Appellant contends he received ineffective
assistance of counsel at the punishment phase of trial because trial counsel
(1) suggested that he admit his guilt to receive a lighter sentence and (2)
failed to file a sworn application for probation.         

At the hearing on the motion for new
trial, appellant stated that trial counsel discussed with him whether he should
testify at the punishment phase[2]
and told him if he were to admit guilt, the trial court would give him a
lighter sentence.  He testified that trial counsel did not file a motion in
limine to prevent the State from asking a question for a curative admission. 
Appellant stated that if he had known he could testify without admitting his
guilt, he would have testified.








Appellant=s trial counsel
stated he had a discussion with appellant about asking the trial court for
mercy if appellant admitted his guilt and told appellant that his testifying
could have an impact on his appeal.  He explained that he discussed with
appellant and his mother a strategy of hiring an expert to evaluate appellant
and testify to his risk assessment.  Appellant and his mother decided against
this strategy because they thought it was an admission of guilt, according to
trial counsel.  

Trial counsel testified that he informed
appellant of his right to testify at sentencing, and appellant made the
decision not to testify.  While trial counsel stated that appellant could have
gotten the impression that he wanted him to admit guilt because of the strategy
he proposed, he also stated that he never told appellant he was going to file a
motion to preclude him from testifying.  In fact, trial counsel argued at the
punishment phase that he did not believe appellant was guilty.  Even if
appellant met the first prong of the Strickland test, the trial court
acted within its discretion in concluding appellant failed to establish a
reasonable probability that the outcome would have been different but for trial
counsel=s asserted
deficiency.  

Appellant also contends he received
ineffective assistance of counsel at the punishment phase of trial because
trial counsel failed to file a motion for probation.  The parties did not
discuss trial counsel=s failure to file a motion for probation
at the motion for new trial hearing, nor did the parties address it in their
affidavits filed prior to the hearing.  Consequently, the record is silent.  In
the face of a silent record, this court will not speculate about why counsel
did not file a motion for probation.  Sudds v. State, 140 S.W.3d 813,
820 (Tex. App.CHouston [14th Dist.] 2004, no pet.).








In addition, the trial court was
statutorily prohibited from considering probation as an appropriate sentence at
the punishment phase.  Under Texas Code of Criminal Procedure article
42.12(3g), judge-ordered community supervision is unavailable to a defendant
adjudged guilty of aggravated sexual assault.  Tex. Code Crim. Proc. Ann. art. 42.12(3g)(a)(1)(E) (Vernon
2006 & Supp. 2008).  Appellant had been found guilty by the jury of
aggravated sexual assault.  Therefore, the trial court could not consider community
supervision in assessing punishment.  Counsel=s performance was
not deficient because he failed to request a punishment that the trial court
was prohibited from considering.  Furthermore, appellant was not prejudiced by
counsel=s failure to
request this punishment because the trial court was prohibited from considering
it.

Viewing the evidence in the light most favorable to
the trial court=s ruling, we conclude the trial court did
not abuse its discretion in declining to find ineffective assistance of counsel
and in denying the motion for new trial.  Accordingly, we overrule appellant=s fourth, fifth, and
sixth issues.

 

III. Conclusion

 

Having overruled appellant=s issues, we affirm the trial court=s judgment.

 

 

 

 

 

/s/      Leslie B.Yates

Justice

 

 

 

Panel consists of Justices Yates, Frost,
and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The complainant=s testimony at trial about the
length of time she viewed her assailant=s face differed on direct examination and
cross-examination.  On direct examination, the complainant said she was looking
at her assailant=s face for 15-20 minutes; on cross
examination, she agreed it could have been more like seven minutes based on her
time estimates of the incident. 





[2]  In his affidavit, appellant stated trial counsel
never discussed with him his right to testify at sentencing.