**Pablo LOPEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–08–00302–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 28, 2010.

Rehearing Overruled March 22, 2010.

Discretionary Review Granted Sept. 22, 2010.

J.C. Castillo, The Lyric Centre, Houston, TX, for Appellant.

Kenneth Magidson, Harris County District Attorney, William J. Delmore III, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and DUGGAN.*

## OPINION

LAURA CARTER HIGLEY, Justice.

A jury convicted appellant, Pablo Lopez, of the first-degree felony offense of aggravated sexual assault of a child.[1] The jury assessed punishment at confinement for 50 years.

In his sole issue, appellant contends that he was denied effective assistance of counsel at trial because counsel (1) "failed to raise the provisions of [Article] 38.072 of the Code of Criminal Procedure and limit the amount of hearsay that could be admitted" and (2) failed to object to inadmissible opinion testimony.[2]

We reverse and remand.

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. *See* Act of May 15, 2001, 77th Leg., R.S., ch. 459, § 5, 2001 Tex. Gen. Laws 893, 898, *amended by* Act of May 28, 2003, 78th Leg., R.S., 528, § 2, 2003 Tex. Gen. Laws 1805, 1806 (current version at TEX PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2008)). The 2003 amendments apply only to an offense that was committed on or after September 1, 2003, the effective date of the amendments. Here, the offense at issue was committed on or about July 1, 2001. Accordingly, the former version of section 22.021 applies to this case.

2. Because we conclude that these grounds are dispositive, we do not reach appellant's contentions that trial counsel failed to conduct an effective voir dire and failed to object to inadmissible testimony at punishment.

## Background

The complainant, B.R., who was 16 years old at the time of trial, testified that appellant, who was her step-father, began sexually abusing her when she was five years old. B.R. testified that the abusive events continued until she reached the age of twelve, when her mother, Marlena Solisa Espana, divorced appellant. Appellant was charged with and convicted of a single act that occurred on or about July 1, 2001, when B.R. was nine.

Concerning the incident at issue, B.R. testified that when her mother was away from home out shopping, appellant instructed B.R. to go into his room and disrobe. B.R. testified that appellant got on top of her and attempted to insert his "thing" into her "private part," referring to male and female sexual organs, respectively. B.R. testified that it hurt very badly and that she begged him to stop. When he continued, B.R. began kicking and scratching, and was able to extricate herself from underneath appellant. B.R. ran from appellant, but he chased her around the house. B.R. fell, and appellant caught her and began beating her. The struggle ended when B.R.'s mother came home. B.R. did not report the incident to anyone at that time.

In 2006, when B.R. was a sophomore in high school, she told a close friend about her history with appellant. The friend reported the information to the friend's aunt, who called B.R.'s school counselor, Toni Sika.

According to Sika, the aunt said that "[B.R.] had told her some things that were upsetting and that some things had happened to [B.R.] that were inappropriate." The aunt did not offer any details. Sika called B.R. into her office. Sika testified that B.R. was very emotional and told her that appellant had touched and fondled her, "had pulled her panties down," and

that he promised to be kind to her in exchange for "things." Sika said that B.R. told her that the incidents began when B.R. was "around four years old." Sika reported the information to CPS.

Claudia Mullin of the Harris County Children's Assessment Center conducted a videotaped interview of B.R. Mullin explained that her purpose during the interview process is to assess the credibility of the child, and she explained certain credibility factors. Mullin explained that, where there are multiple allegations of sexual abuse, she seeks to establish the first and last acts. Mullin testified that she used this method while interviewing B.R. and that B.R.'s "disclosure seemed credible."

According to Mullin's testimony, the first incident B.R. could remember occurred while B.R. was "either four or five." B.R. remembered having gone into the kitchen and asked appellant for something to eat. B.R. reported that appellant responded, "You have to give me something first." B.R. said that appellant "stood her on a chair, pulled down her panties, pulled out his thing, . . . and started to touch her down there in front."

Concerning the incident at issue, B.R. reported to Mullin that appellant pulled B.R. by the hair into his bedroom and insisted that they "were going to do it." B.R. told Mullin that appellant pushed her onto her mother's bed, that he took off her pants, and that he "didn't put it all the way in, just halfway."

Maria Benavides, B.R.'s mentor as part of a school program, testified that she learned of B.R.'s allegations against appellant through Sika. Benavides called B.R. and met with her. Benavides testified that B.R. was emotional as she recounted a series of abusive events that had begun when B.R. was four or five years old. On

the first occasion in B.R.'s memory, appellant was in the kitchen cooking while her mother was at the laundromat. B.R. asked him if she could have something to eat and he said, "Fine. What are you going to give me?" Appellant picked up B.R., placed her on a chair or table, removed her panties, and "rubbed his penis on her vagina." Benavides testified that B.R. said that this conduct happened "a lot" and that she frequently had to "fight him off."

Concerning the incident at issue, Benavides testified that B.R. said that, while her mother was away at the store, appellant had gotten on top of her. B.R. pushed him off, but he beat her very badly. Appellant told B.R.'s mother that he had disciplined B.R. for failing to do her chores.

Officer M. Parrie, of the Juvenile Sex Crimes Division of the Houston Police Department, testified that he viewed B.R.'s videotaped interview but, as is customary, he did not speak directly with B.R. Officer Parrie testified that B.R. stated during her interview that Sika was the first person she had told about the incident. Officer Parrie interviewed appellant and, based in part on the interview, arrested appellant.

Appellant testified[3] at trial that he works six days per week from 6:00 a.m. to 6:00 p.m.; that B.R.'s mother does not drive and does not have a car; that he was "never" left alone with B.R., or his other two daughters; and that B.R. had fabricated the allegations.

The jury found appellant guilty of aggravated sexual assault of a child and assessed punishment at 50 years' confinement. Appellant moved for the withdrawal of his trial counsel, Robert Valles, whose representation is the subject of this appeal, and for the appointment of appellate counsel, J.C. Castillo. Appellant's motion was granted. The trial court denied appellant's motion for new trial. This appeal followed.

### Ineffective Assistance of Counsel

In his sole issue, appellant contends that he was denied his right to effective assistance of counsel at trial because counsel (1) "failed to raise the provisions of Section 38.072 of the Code of Criminal Procedure and limit the amount of hearsay that could be admitted" and (2) failed to object to inadmissible opinion testimony.

### A. Standard of Review

Appellant is entitled to reasonably effective assistance of counsel. See U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to counsel, however, does not mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.Crim. App.2006). To prove ineffective assistance of counsel, appellant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim.App.2005). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

To prevail, appellant must prove ineffective assistance by a preponderance of the evidence and must overcome the strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance or might reasonably be considered sound trial strategy. See Robertson, 187 S.W.3d at 482–83; Gamble v.

3. Appellant is fluent only in the Spanish language and testified through an interpreter.

*State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). A failure to make a showing under *either* prong defeats a claim of ineffective assistance of counsel. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003) (emphasis added).

As the reviewing court, we look to the totality of the representation and to the circumstances of the case, not to isolated errors. *Robertson,* 187 S.W.3d at 483–84. We must consider the adequacy of assistance as viewed at the time of trial, not through hindsight. *Id.* at 482–83.

Additionally, we cannot speculate as to the reasons supporting counsel's behavior. *Bone v. State,* 77 S.W.3d 828, 835 (Tex.Crim.App.2002).ʼ Allegations of ineffectiveness must be firmly founded in the record. *Id.* at 833 & n. 13. Ordinarily, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander,* 101 S.W.3d at 110–11. In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court should not find deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005).

In the rare cases in which the record on direct appeal is sufficient to show that counsel's performance was deficient, an appellate court should address the claim. *Robinson v. State,* 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000). An appellant may prevail on an ineffective assistance claim by providing a record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallett v. State,* 65 S.W.3d 59,

63 (Tex.Crim.App.2001). If "no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [he] did." *Andrews,* 159 S.W.3d at 102. A single egregious error of omission or commission by counsel has been held to constitute ineffective assistance, even in the absence of a record setting forth counsel's reasons for the challenged conduct. *Vasquez v. State,* 830 S.W.2d 948, 950–51 (Tex.Crim.App.1992); *McKinny v. State,* 76 S.W.3d 463, 470–71 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

## B. Counsel's Performance

### 1. *Article 38.072 and Hearsay*

Appellant first contends that his trial counsel was ineffective because he "failed to raise the provisions of Section 38.072 of the Code of Criminal Procedure and limit the amount of hearsay that could be admitted."

Generally, hearsay statements[4] are inadmissible except as provided by statute or other rule. TEX.R. EVID. 802; *see* TEX.R. EVID. 803 (providing exceptions). Texas Code of Criminal Procedure article 38.072 provides a statutory exception that allows the State to introduce outcry statements made by a child victim of certain offenses, which would otherwise be considered inadmissible hearsay. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2222–23, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 710, § 1–2, 2009 Tex. Gen. Laws 1780, 1780–81 (current version at TEX.CODE CRIM. PROC. ANN. art. 38.072 § 1–

---

**4.** Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX R. EVID. 801(d).

2 (Vernon Supp. 2009)) [5]; *see Martinez v. State*, 178 S.W.3d 806, 810–11, n. 14 (Tex. Crim.App.2005). Article 38.072 applies to, inter alia, the prosecution of assaultive offenses under Penal Code section 22.021 committed against children twelve years of age and younger, as here. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2222–23 (amended 2009).[6] Article 38.072 allows statements of the child victim describing the alleged offense to be admitted through an "outcry witness," that is, the first adult "to whom the child makes a statement that in some discernible manner describes the alleged offense." *See* Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2222–23 (amended 2009) (current version at TEX.CODE CRIM. PROC. ANN. art. 38.072 § 2(a) (Vernon Supp. 2009)); *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim.App.1990) (explaining that statement must be "more than words which give a general allusion that something in the area of child abuse was going on"). However, testimony from more than one outcry witness may be admissible under article 38.072 if the witnesses describe different events and do not merely repeat the same event as related to them by the victim. *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex.App.-Texarkana 2000, pet. ref'd).

Invoking the statutory exception, however, requires notice and a hearing. *Long v. State*, 800 S.W.2d 545, 546 (Tex. Crim.App.1990). Pursuant to article 38.072, a statement is not inadmissible as hearsay if (1) the party intending to offer the statement timely notifies the adverse party of its intention to do so, and provides the name of the witness and a summary of the statement; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and (3) the child testifies or is available to testify at the proceeding. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(b) (Vernon 2009).

Here, the record shows that the State gave a "Notice of Intention to Use Child Abuse Victim's Hearsay Statement." The Notice states that the State intended to offer B.R.'s statements though Maria Benavides and Claudia Mullin, and includes a summary of their statements. At trial, the State presented the testimony of Benavides and Mullin, as well as that of Sika, the school counselor, without a defense objection.[7] The testimony of Benavides, Mullin, and Sika constituted inadmissible hearsay.

First, the record before us does not indicate that an article 38.072 hearing

---

5. The applicable 2009 amendment applies only to a criminal proceeding commenced on or after its effective date, which is September 1, 2009. *See* Act of May 28, 2009, 81st Leg., R.S., ch. 710, § 3, 2009 Tex. Gen. Laws 1780, 1781. Here, the proceeding was commenced on or about January 11, 2008. Accordingly, the former version of article 38.072, section 1, applies to this case.

6. The victim's age when the offense is committed triggers whether the statute applies, not the victim's age at the time the outcry statement is made. *See Harvey v. State*, 123 S.W.3d 623, 627–29 (Tex.App.-Texarkana 2003, pet. ref'd) (holding that, for article 38.072 to apply, not only must offense have been committed against child age 12 or younger, but victim, while still "a child"—that is, not having reached his or her 18th birthday—must have confided details of ordeal to person age 18 years or older). Here, B.R. was age nine at the time of the offense and was under age eighteen at the time of her disclosure.

7. The State did not name Sika in its notice of intention to use a child abuse victim's hearsay statement. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1) (Vernon 2009). Appellant did not, however, complain about this at trial, nor does he complain about it on appeal.

was requested or conducted. Appellant contends that "[n]o hearing was ever requested by trial counsel," and that "[t]he judge did not make a determination ... as required by Texas Code of Criminal Procedure, Article 38.072"; the State responds that no hearing was conducted.[8] The requirements of article 38.072 are mandatory. *Long*, 800 S.W.2d at 547; *Duncan v. State*, 95 S.W.3d 669, 671 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). When no hearing is conducted, the statutory requirements have not been met, the exception is not invoked, and the testimony constitutes inadmissible hearsay. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2); *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App.1992).

▮ Second, each of the witnesses testified concerning B.R.'s statements regarding the same event—the alleged offense.[9] Sika, the school counselor, testified that B.R. told her that appellant had touched and fondled her, "had pulled her panties down," and that he promised to be kind to her in exchange for "things." Mullin, of CAC, testified that B.R. reported to her that appellant had pulled her by the hair into his bedroom and had insisted that they "were going to do it." B.R. told Mullin that appellant pushed her onto her mother's bed, that he took off her pants, and that he "didn't put it all the way in, just halfway." Benavides testified that B.R. told her that, while her mother was away at the store, appellant had gotten on top of her. B.R. had pushed him off, but appellant beat her very badly. Testimony from more than one outcry witness is not admissible under article 38.072 when, as here, the witnesses merely repeat the same event as related to them by the victim. *Broderick*, 35 S.W.3d at 73.

▮ Moreover, the testimonies of Sika, Mullin, and Benavides constituted improper bolstering of B.R.'s testimony. *See Farris v. State*, 643 S.W.2d 694, 697 (Tex.Crim.App.1982). Bolstering generally refers to evidence that improperly supports the testimony of an unimpeached witness or adds credence or weight to prior evidence introduced by the same party. *State v. Balderas*, 915 S.W.2d 913, 919 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd); *see Rivas v. State*, 275 S.W.3d 880, 886 & n. 3 (Tex.Crim.App.2009) (explaining that "[w]hile the term 'bolstering' is slowly dying as an objection on its face, it has not yet expired, despite the fact that the term itself failed to survive the adoption of the Rules" and indicating that "bolstering" has ties to Texas Rule of Evidence 613(c), which involves prior consistent statements and reiterates principles of hearsay). Bolstering occurs when the testimony's sole purpose is to enhance the credibility of a witness or source of evidence, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex.Crim.App.1993). Here, although counsel cross-examined B.R. at trial, counsel focused his questions on B.R.'s relationship with her mother. Each witness's rendition of the facts, as told to them by B.R., served to add credence or weight to B.R.'s testimony and did not substantively contribute toward making

---

**8.** Generally, the party seeking admissibility of the evidence bears the burden of invoking the exception.

**9.** Article 38.072 "applies only to statements that describe the alleged offense." *See* Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2222–23, *amended by* Act of May 27, 2009, 81st Leg., R.S., ch. 710, § 2, 2009 Tex. Gen. Laws 1780, 1780–81 (current version at TEX.CODE CRIM PROC. ANN. art. 38.072 § 2(a) (Vernon Supp. 2009)).

"the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *See id.*

Because the only issue at trial was B.R.'s credibility, trial counsel's failure to object to such extensive improper testimony can only be characterized as falling below an objective standard of reasonableness. *See Andrews,* 159 S.W.3d at 101; *Vasquez,* 830 S.W.2d at 950–51; *McKinny,* 76 S.W.3d at 470–71.

We recognize that the record is silent regarding trial counsel's reasons for allowing the State to present the hearsay testimony of multiple witnesses concerning the alleged offense, without an article 38.072 hearing. These contentions lie outside the scope of the issues appellant raised in his motion for new trial. Notwithstanding, we conclude that this is one of those cases in which the record clearly reflects that counsel's performance "fell below an objective standard of reasonableness." *See Andrews,* 159 S.W.3d at 102 (concluding that if "no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [he] did").

We also recognize that this court has previously concluded that a failure to object to outcry testimony by multiple witnesses can constitute plausible strategy. *Vega v. State,* No. 01-05-00358, 2006 WL 407821, at *3 (Tex.App.-Houston [1st Dist.] Feb. 23, 2006, pet. ref'd) (mem. op., not designated for publication). We did so, however, under circumstances not present in this case.

In *Vega,* three outcry witnesses were permitted to testify at trial, without objection by defense counsel. *Id.* at *1. On appeal, appellant contended that his coun-

sel was ineffective for having failed to object. *Id.* We concluded that the record demonstrated that there were "two reasons that counsel may have chosen not to object to the testimony." *Id.* at *3. First, "counsel may have concluded that his attack on [the child complainant's] credibility through cross-examination allowed the State to introduce the [outcry witness testimony] to show a prior consistent statement." *Id.* Second, counsel had "relied heavily" on the child complainant having initially told the three witnesses that someone other than appellant had committed the sexual assault at issue. *Id.* We concluded, *"Under these circumstances, we cannot say that counsel's failure to challenge the outcry statements could not have been a plausible trial strategy." Id.* at *4 (emphasis added).

The instant case is distinguishable from *Vega* in that, here, as discussed above, counsel did not attack B.R.'s credibility during cross-examination and B.R. never wavered in her testimony or in her allegation that appellant was the perpetrator. Under these circumstances, we can glean no sound trial strategy from defense counsel's failure to object to the extensive inadmissible testimony of the multiple outcry witnesses when the only issue at trial was the credibility of the complainant. *See Andrews,* 159 S.W.3d at 101–02. We conclude that, even if allowing extensive, inadmissible testimony to come in without objection constituted counsel's trial strategy, it cannot reasonably be considered *sound* trial strategy. *See Robertson,* 187 S.W.3d at 482–83 (stating that, to prevail, appellant must prove ineffective assistance by preponderance of evidence and must overcome strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance or might reasonably be considered *sound* trial strat-

egy). We hold that counsel's performance was deficient.

### 2. *Opinion testimony*

██ Next, appellant contends that his trial counsel was ineffective because he failed to object to opinion testimony by Officer Parrie and by Mullin that B.R. was credible.

██ "It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible evidence." *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd) (citing *Schutz v. State*, 957 S.W.2d 52, 59 (Tex.Crim.App.1997)). "A direct opinion on the truthfulness of the child" is inadmissible. *Yount v. State*, 872 S.W.2d 706, 708 (Tex.Crim.App.1993); *Sessums v. State*, 129 S.W.3d 242, 247 (Tex.App.-Texarkana 2004, pet. ref'd). Although an expert may testify to behaviors and traits that might constitute indicia of manipulation, *Schutz*, 957 S.W.2d at 59, or that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been abused, *Perez v. State*, 113 S.W.3d 819, 832 (Tex.App.-Austin 2003, pet. ref'd), a direct comment on a complainant's "truthfulness" is "absolutely inadmissible." *Sessums*, 129 S.W.3d at 247. This rule applies to expert and to lay witness testimony. *Fisher v. State*, 121 S.W.3d 38, 41–42 (Tex.App.-San Antonio 2003, pet. ref'd). This type of testimony is inadmissible because it does more than "assist the trier of fact to understand the evidence or to determine a fact in issue"; it decides an issue for the jury. *Yount*, 872 S.W.2d at 709.

Specifically, appellant complains of the following testimony by Officer Parrie:

[Officer Parrie]: The statements [B.R.] gave to Ms. Benavides and the statements she gave to Ms. Sika, there were details that she gave *that I thought lend credence to* what [B.R.] was saying.

[Defense Counsel]: Could you share with us what those details were?

[Officer Parrie]: I know one of the details was that she talked about when she was five years old and the defendant made her stand on a chair and, you know, had her lower her pants and then digitally penetrated her.

(Emphasis added.)

Officer Parrie's testimony, which specifically relates facts concerning the incident when B.R. was five, clearly relates the content of the out-of-court statement. Officer Parrie testified that these details, in his opinion, "len[t] credence" to B.R.'s testimony. Hence, Officer Parrie's testimony constituted a direct opinion on the truthfulness of B.R., which constituted inadmissible evidence. *See Yount*, 872 S.W.2d at 708; *Sessums*, 129 S.W.3d at 247.

██ Appellant also complains that Mullin was permitted to testify that B.R. was "very credible." The record shows that Mullin testified during direct examination, in relevant part, as follows:

[State]: And did [B.R.'s] disclosure seem valid based on the factors that you have just described to the jury that you consider when determining the validity of disclosure?

[Mullin]: Her disclosure seemed *very credible*.

[State]: And what was it about her disclosure that seemed credible to you?

[Mullin]: The way she told her story. She was telling it about something that did happen. She described—especially the first incident that she remembered, she described body positions and, you know, various things happening that, again, she put—she put me in a room, and I was in the

room visualizing what was going on based on the detail that she was able to give.

(Emphasis added.) Like that of Officer Parrie, the testimony of Mullin constituted a direct opinion on the truthfulness of B.R., which was inadmissible. *See Yount,* 872 S.W.2d at 708; *Sessums,* 129 S.W.3d at 247.

■■■ In *Lane v. State,* the appellant contended that his counsel was ineffective for having failed to properly challenge opinion testimony concerning the truthfulness of the child complainant. 257 S.W.3d 22, 26 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd). There, a children's assessment center representative testified that false accusations are "extremely rare," are "a rare occurrence," and that children "do not make—tend to make false accusations." *Id.* at 24–25. Another representative from the center testified that "in her opinion formed after counseling [the child complainant] . . ., [the child complainant] had post-traumatic stress disorder caused by childhood sexual abuse." *Id.* at 25.

The *Lane* court reasoned that, because jurors must decide the credibility of the parties, opinions on the truthfulness of a child complainant's allegations or that a class of persons to which the complainant belongs is truthful, are prohibited. *Id.* at 27 (citing *Yount,* 872 S.W.2d at 708, 710–12). Testimony that false accusations of childhood sexual assault are very rare had the effect of telling the jury they could believe the child's testimony. *Id.* Testimony that it had been determined from counseling sessions that the child had been sexually assaulted constituted direct testimony that the complainant was being truthful. *Id.* Such testimony is prohibited. *Id.*

The *Lane* court concluded that the record on direct appeal was sufficient to determine whether appellant's trial counsel's

performance was deficient. *Id.* The court further concluded that, even though there was nothing in the record explaining counsel's strategy for allowing the testimony into evidence, "there was no conceivable strategy or tactic that would justify allowing this inadmissible testimony in front of the jury." *Id.* at 27. The court held that counsel's performance was deficient. *Id.* at 28.

Here, the sole issue at trial was the credibility of B.R. We conclude that, as did the court in *Lane,* although there is nothing in the record explaining counsel's strategy for allowing into evidence direct testimony by Parrie and by Mullin regarding B.R.'s truthfulness, there is no conceivable strategy or tactic that would justify allowing such inadmissible testimony in front of the jury. *See id.* at 27–28; *Garcia v. State,* 712 S.W.2d 249, 253 (Tex.App.-El Paso 1986, pet. ref'd) (concluding that failure to enter objection to testimony by detective and child protective services officer concerning their opinions as to truthfulness of child complainant "clearly was ineffective assistance"). We hold that counsel's performance was deficient.

## C. Prejudice

■■■ Having determined that counsel's performance at trial was deficient, we consider whether there is a reasonable probability that the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068; *Andrews,* 159 S.W.3d at 101. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Here, the record shows that Sika, Mullin, and Benavides were permitted to testify extensively at trial, without objection by counsel, concerning B.R.'s statements to

each regarding the alleged offense. The State focused heavily on such testimony throughout its closing argument. In addition, Officer Parrie and Mullin were permitted to testify, without objection, that they each believed that B.R. was truthful. The only other testimony presented by the State at trial was that of B.R. and that of Dr. L. Thompson, Jr., of the CAC. Dr. Thompson testified only in general terms and not specifically about B.R.

In sum, the jury was exposed to a barrage of inadmissible testimony concerning B.R.'s credibility, when the sole issue at trial was her credibility. *See Miller v. State,* 757 S.W.2d 880, 884 (Tex.App.-Dallas 1988, pet. ref'd) (concluding that failing to object to "extensive, inadmissible testimony concerning the only real issue at trial—complainant's credibility" results in denying appellant effective assistance of counsel). We can only reasonably conclude that the testimony of B.R. was bolstered immeasurably by the inadmissible testimony of three outcry witnesses, which included a school counselor and a CAC representative, and that of Officer Parrie and Mullin. *See Farris,* 643 S.W.2d at 697 (concluding, "It would be unreasonable not to conclude that the testimony of the small children was bolstered immeasurably by testimony that they were utterly incapable of fantasizing about [the conduct at issue].").  We conclude that appellant has met his burden to show that he was prejudiced by the deficiency in counsel's performance. *See Strickland,* 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068; *Andrews,* 159 S.W.3d at 101.

After reviewing the totality of defense counsel's representation, we conclude that appellant has met his burden under *Strickland* to show that his counsel was ineffective.

Accordingly, we sustain appellant's sole issue.

## Conclusion

We reverse the trial court's judgment and remand for further proceedings.