Opinion issued December 23, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00098-CR

———————————

Philippe Rivera, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 179th District Court 

Harris County, Texas



Trial Court Case No. 1170295

 



 

MEMORANDUM OPINION

A jury found appellant, Philippe
Rivera, guilty of the offense of attempted sexual assault[1] and assessed his punishment
at confinement for twenty years.  In
three points of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction and he received ineffective
assistance of counsel at trial.

          We
affirm. 

Background

          The
complainant testified that on May 26, 2008, she was at her apartment with her
boyfriend, Amaury Lugo.  After the two
began arguing, Lugo told her that he wanted a “separation,” and he left the
complainant’s apartment.  Lugo later
returned with several family members, including appellant, Lugo’s nephew, and
they began drinking outside of the apartment. 
The complainant then telephoned for emergency assistance because she was
“bothered” by the group drinking in front of her apartment.  

Approximately thirty minutes after
the group had left the area, near 6:00 or 7:00 p.m., appellant “came knocking
at the door.”  He informed the
complainant that Lugo had sent him, so she allowed appellant to enter the
apartment.  After they sat down in two
chairs in the living room and began to have a conversation, appellant put his
hands down his pants and began “touching his private” and “masturbating.”  This infuriated the complainant, who told
appellant “not to touch himself” and to respect her because she is “the wife of
his uncle.”  As she “yell[ed] at him, he
stood up and pushed” her in her chest area and called her a “bitch.”  The complainant “landed on [a] chair and the
chair fell back,” where she landed on the floor.  Appellant then pulled her by her feet, “made
a knot with the bottom” of her jogging pants, and dragged her through the
kitchen, towards her bedroom.  He then
picked up the complainant and “threw” her over his shoulder.  The complainant explained that she fought
back because she did “not want [appellant] to touch” her, and she fell on her
“knees and elbow.”  

When appellant threw the
complainant on her bed, it rolled over, and she “grabbed the phone” to call for
emergency assistance.  Appellant then
pulled the telephone cord out of the wall, and the complainant was unable to
complete her call.  Appellant, without
the complainant’s consent, pulled off her pants and underwear as she had dialed
for emergency assistance.  Appellant, who
“did not have his clothes on” at this point, punched the complainant in her
face as she was “crossing [her] legs.” 
After appellant separated the complainant’s legs, he tried to put his
[penis] inside” her vagina, but she “grabbed” his penis and “twisted it.”  The complainant then reached for the telephone
cord and put “it around [appellant’s] neck.” 
She then broke free, grabbed a pair of scissors, and tried to stab
appellant.  The complainant, who was
unsure if she had stabbed the appellant, “told [him] that he needed to leave
because [she] was going to kill him.” 
Appellant then took his clothes and left the apartment running.  

          Appellant,
having left his cellular telephone in the complainant’s apartment, returned and
“tried to break” her window in order to retrieve the telephone.  After appellant yelled that “he was going to
kill [the complainant],” she threw his telephone out of the window.  The complainant explained that she did not
pursue contacting law enforcement that evening because she believed that she
might have stabbed appellant.  However,
later that evening, she did inform her “husband,” Lugo, and appellant’s mother
about the incident, and the next day she reported the incident to law
enforcement.  The complainant explained
that she did not seek medical treatment because she had not been “sexually
abused.”  She further stated that she and
Lugo had never reconciled.  

Houston Police Department Officer
T. Jackson testified that on May 27, 2008, the complainant met with him to
report the previous day’s incident.  He
noted that she was “upset,” and he “could sense a little anger.”  Jackson found the complainant’s statements to
be “very consistent.”  After taking the
complainant’s statement, Jackson took photographs of her injuries, and he noted
injuries “on her elbows and knees, which were pretty consistent with her
story,” and her bruises “were pretty fresh.” 
Although Jackson attempted to contact appellant, he was unable to do
so.  Jackson did not attempt to retrieve
the telephone cord, scissors, or any other physical evidence from the
complainant’s apartment.  And he did not
“remember anything in regards to the cell phone,” nor did he include anything
in his report about the telephone.  

Appellant’s trial counsel presented
the testimony of Flor Deliz Dixon, appellant’s aunt, who explained that
appellant was at her house in Dickinson, fifty minutes away from the
complainant’s apartment, at the time of the incident. Dixon stated that on the
morning of May 26, 2008, Lugo telephoned Dixon and asked “if he could bring
[his] furniture” to her house.  She noted
that the complainant was always angry with the family and “always fighting with
[Lugo].”  Lugo rented a truck, and, when
he moved his furniture to Dixon’s from the complainant’s apartment, he was
accompanied by Dixon’s son, Michael; her brother, Ariel; appellant; and
Jonathon.  The men brought the furniture
to Dixon’s house after 5:00 p.m., and “it was dark when they left.”  She explained that the group left her house
after 7:00 p.m. and appellant could not have been at the complainant’s
apartment around 7:00 p.m. because he was in Dixon’s house at that time.  Dixon knew the time the men arrived and left
because she always cooks at 6:00 p.m. and she wanted the group to leave so she
could cook dinner.  She remembers that
the men left after 7:00 p.m. because she had to “make sandwiches that night.”  Dixon noted that the complainant and Lugo
lived together at the time of trial and, after Lugo moved out, he “moved right
back” to living with the complainant.

Appellant’s trial counsel then
presented the testimony of Lugo, who explained that on May 26, 2008, he decided
to leave the complainant after fighting with her.  He noted that he sometimes lived with the
complainant and, at other times, with his sister.  At the time of the argument, Lugo had another
“girlfriend.”  After the argument, Lugo
took his furniture to the home of his sister, Dixon, and appellant accompanied
him to retrieve the furniture and transfer it to Dixon’s house.  It was dark by the time the men left his
sister’s house, and they dropped appellant off at Ariel’s house, where
appellant had a bicycle.  After appellant
told Lugo that he was going to see a friend, appellant left on his bicycle.  Later, Lugo received a telephone call from the
complainant, and he could hear “[appellant] banging on the window.”  Lugo explained that Ariel’s house is about
five miles from the complainant’s apartment and appellant “had enough time to
get to [the complainant’s] apartment.” 
The next day, Lugo took the complainant, along with appellant’s mother,
to a police station to report the incident because he “believed” the
complainant.  He explained that he and
the complaint still have a relationship and sometimes he stays with the
complainant and other times with his sister. 
On cross-examination, Lugo admitted that, shortly before testifying, he
had “lied” to the prosecutors about his continuing relationship with the
complainant, but “not much,” “just on that part.” 

 

Sufficiency of the Evidence

          In
his first point of error, appellant argues that the evidence is legally
insufficient to support his conviction because the “State failed to prove that
[he] committed the offense beyond a reasonable doubt.”  In his second point of error, appellant argues
that the evidence is factually insufficient to support his conviction because
the evidence, when viewed without the prism of “in the light most favorable to
the prosecution,” is so weak that the jury’s verdict is clearly wrong and
manifestly unjust.  

          We
review the legal sufficiency of the evidence by considering all of the evidence
in the light most favorable to the prosecution to determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). 
Our role is that of a due process safeguard, ensuring only the
rationality of the trier of facts’ finding of the essential elements of the
offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988).  We give
deference to the responsibility of the fact-finder to fairly resolve conflicts
in testimony, to weigh evidence, and to draw reasonable inferences from the
facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant committed”
the criminal offense of which he is accused. 
Id.  

We now review the factual
sufficiency of the evidence under the same appellate standard of review as that
for legal sufficiency.  Ervin v. State, No. 01-10-00054-CR, 2010 WL
4619329, at *2–4 (Tex. App.—Houston [1st Dist.] November 10, 2010, no pet. h.)
(citing Brooks v. State, 323 S.W.3d
893, 912, 925–26 (Tex.
Crim. App. 2010).  Under this standard,
we are to examine “the evidence in the light most favorable to the prosecution”
and determine whether “a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.”  Jackson,
442 U.S. at  318–19, 99 S. Ct. at  2788–89. 
Evidence is insufficient when the “only proper verdict” is
acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218
(1982).  

A person commits the offense of
attempted sexual assault if, with the intent to commit sexual assault, he
commits an act amounting to more than mere preparation that tends, but fails,
to effect the commission of sexual assault. 
See Tex. Penal Code Ann. § 15.01(a) (Vernon 2003).  A person commits the offense of sexual
assault if he intentionally or knowingly causes the penetration of the anus or
sexual organ of another person by any means without that person’s consent.  Id. §
22.011 (Vernon Supp. 2010). 

In support of his sufficiency
challenge, appellant asserts that “the State’s case rests entirely on the
credibility of one witness,” the complainant, who “lied under oath and was
later exposed by the testimony” of her boyfriend, Lugo.  He emphasizes that there “was no confession,”
“no physical evidence offered by the State to verify the complainant’s story,
(i.e., no phone cord, no scissors, and no D.N.A.),” no photographs of bruises
on the complainant’s face, and “no medical records to verify the complainant
sustained injuries as a result of an altercation.” 

However, the testimony of a single
eyewitness is sufficient to support a felony conviction.  Lee v.
State, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), aff’d,
206 S.W.3d 620 (Tex. Crim. App. 2006); Davis
v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (affirming a conviction for aggravated
robbery where central issue involved a single witness’s credibility); Aguilar v. State, 468 S.W.2d 75, 77
(Tex. Crim. App. 1971) (upholding a conviction for attempted murder where only
one witness saw appellant with a gun). 
Additionally, the testimony of a complainant alone is sufficient to
support a conviction for sexual assault. 
Villalon v. State, 791 S.W.2d
130, 133 (Tex. Crim. App. 1990); Cruz v.
State, 238 S.W.3d 389, 395 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d); Jensen v. State, 66 S.W.3d
528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d). 

Viewing all of the evidence in the
light most favorable to the prosecution, the jury was presented with the
complainant’s testimony about the attempted sexual assault, along with the
testimony of several other witnesses. 
The complainant testified that after she allowed appellant to enter her
apartment, appellant began masturbating and, after she expressed her anger, he
dragged her across the floor, threw her body over his shoulder, and threw her
on her bed.  When she fell, her knees and
elbow were bruised.  She further
testified that appellant removed her clothes, punched her in the face,
separated her legs, and tried to put his penis inside her vagina.  In addition to the complainant’s testimony,
the jury was provided with the testimony of Officer Jackson, who noted that her
injuries were consistent with such an assault, and he took photographs of the
injuries.  Although appellant’s
conviction may be upheld solely on the testimony of the complainant, Jackson’s
photographs provided additional evidence supporting the complainant’s
testimony.  

In support of his factual
sufficiency challenge, appellant emphasizes that he presented an alibi witness,
Dixon, who testified that appellant was at her house during the time of the
attempted assault.  Dixon did testify
that appellant was at her house until after dark on the day of the assault and he
could not have committed the assault because he did not leave her house until
after 7:00 p.m.  Also, although the
complainant did testify that she and Lugo had not reconciled, Lugo and Dixon
testified that the complainant and Lugo had reconciled.  Appellant argues that because Lugo and
Dixon’s testimony contradicted the complainant’s, the complainant must have
“lied under oath.”  However, as noted
above, we are now to view the evidence in the light most favorable to the
prosecution in addressing appellant’s complaint about the factual sufficiency
of the evidence.  See Ervin, 2010 WL 4619329, at *2–4.  Viewing the evidence in the
light most favorable to the prosecution, a reasonable trier of fact could have
found beyond a reasonable doubt that appellant attempted to sexually assault
the complainant.  Accordingly, we hold
that the evidence is sufficient to support appellant’s conviction.

We overrule appellant’s first and
second points of error. 

Ineffective Assistance of Counsel

          In his third point of error,
appellant argues that his trial counsel provided him ineffective assistance
because he (1) elicited “evidence linking [] appellant to the crime and
destroying the alibi defense,” (2) failed to “adequately investigate the facts,”
and (3) failed to object to “inadmissible opinion testimony.” 

          To
show ineffective assistance of counsel, an appellant must demonstrate that
counsel’s representation fell below an objective standard of reasonableness
based on prevailing professional norms and, but for counsel’s errors, there is
a reasonable probability that the result of the proceeding would have been
different.  Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064–65 (1984); Andrews
v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).  A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome.  Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  It is appellant’s burden to prove a claim of
ineffective assistance of counsel by a preponderance of the evidence.  Id.
at 813; Mitchell v. State, 68 S.W.3d
640, 642 (Tex. Crim. App. 2002). 
Appellant must satisfy both prongs of the Strickland test, or the claim of ineffective assistance will
fail.  See Strickland, 466 U.S. at 700, 104 S. Ct. at 2071; Garcia v. State, 57 S.W.3d 436, 440
(Tex. Crim. App. 2001). 

          The
assessment of whether a defendant received effective assistance of counsel must
be made according to the facts of each case. 
Thompson, 9 S.W.3d at
813.  We must look to the “totality of
the representation and the particular circumstances of each case” in evaluating
the effectiveness of counsel.  Id. 
In so doing, we must also recognize the strong presumption that trial
counsel’s performance fell within the wide range of reasonable professional
assistance.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813.  In the absence of evidence of trial counsel’s
reasons for the challenged conduct, an appellate court commonly will assume a
strategic motivation if any can possibly be imagined, and it will not conclude
the challenged conduct constituted deficient performance unless the conduct was
so outrageous that no competent attorney would have engaged in it.  Garcia,
57 S.W.3d at 440.  We will not speculate
to find trial counsel ineffective when the record is silent on counsel’s
reasoning or strategy.  Robinson v. State,
16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).  In rare cases, however, the record can be
sufficient to prove that counsel’s performance was deficient, despite the
absence of affirmative evidence of counsel’s reasoning or strategy.  Id.

Introduction of Harmful Evidence and
Failure to Investigate

Appellant asserts that his trial
counsel, through Lugo, “elicited evidence linking appellant to the crime and
destroy[ed] the alibi defense” and his direct examination of Lugo “bolstered,
rather than challenged, the prosecution by emphasizing harmful evidence.”  Appellant complains of the following
testimony:

[Trial
Counsel]:    Now, Ariel’s house is how far
from [the complainant’s house? 

 

[Lugo]:                 5 miles.  It’s not far. 
It’s close.

 

[Trial
Counsel]:    Okay.  And then while you were at Ariel’s house,
[the complainant] called?

 

[Lugo]:                 Yeah.  Whenever I left the truck, we went back to
Ariel’s and I got lost . . . .

 

[Trial
Counsel]:    When did [the complainant]
call?

 

[Lugo]:                 And [the complainant] called
and said, Come quick.  He wants to break
in again.  She already got him out.

 

[Trial
Counsel]:    So, that was after how much
time – after how long that you saw him on his bike?

 

[Lugo]:                 I think an hour, much [sic] or
less.

 

On cross-examination, Lugo further explained that he
had taken appellant to Ariel’s because appellant “had something to do” and,
approximately thirty minutes later, he saw appellant riding his bike.  Lugo agreed that appellant “had enough time
to get to [the complainant’s] apartment” and appellant “knew she was
alone.  And [appellant] took
advantage.”  Trial counsel did not object
to this testimony. 

In support of his argument that the
questioning of Lugo by his trial counsel “bolstered” the State’s case, his
trial counsel should not have introduced harmful evidence, and his trial
counsel should have made a further investigation,[2] appellant relies on Fernandez v. State, 830 S.W.2d 693 (Tex.
App.—Houston [1st Dist.] 1992, no
pet.).  In Fernandez, however, trial counsel failed to object to hearsay
evidence that was not established through any other evidence.  Id.
at 697.  By failing to object to the
evidence, trial counsel made “insufficient evidence sufficient.”  Id. at
698.  Further, by allowing the
defendant’s wife to testify, trial counsel “cured the unpreserved error in
admitting the hearsay,” and forfeited an instructed verdict.  Here, trial counsel did not elicit testimony
that made “insufficient evidence sufficient.” 


In support of his assertion that a
failure to investigate constitutes ineffective assistance, appellant cites Melton v. State, 987 S.W.2d 72, 77 (Tex.
App.—Dallas 1998, no pet.) (holding trial counsel was ineffective for allowing
defendant to plead guilty after informing defendant that there may be video of
him committing the crime when no video existed and counsel failed to
investigate the existence of such video). 
Here, however, appellant has not provided any evidence of a failure to
investigate.  

In analyzing this issue, we must
decide whether any reasonable trial strategy could explain trial counsel’s
decision to present Lugo’s testimony. 
The decision to present witnesses is largely a matter of trial
strategy.  Shanklin v. State, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005), pet. dism’d, improvidently granted, 211 S.W.3d 315 (Tex. Crim. App.
2007).  It is possible that trial counsel
could have reasonably believed that Lugo’s testimony would contradict that of
the complainant’s, thus calling into question her credibility.  Furthermore, as argued by appellant on
appeal, trial counsel could have made the decision to present Lugo’s testimony
in order to reveal a motive for the complainant “to fabricate the entire
incident.”  In the absence of a record
demonstrating trial counsel’s reasons for calling a witness and eliciting
testimony, we must defer to trial counsel’s strategy.  Id.  Appellant has failed to show that trial
counsel’s actions were outside the range of reasonable competence.  Accordingly, appellant has not demonstrated
that counsel’s performance was deficient in this regard. 

Opinion Testimony

Appellant further asserts that his
trial counsel “failed to properly object to inadmissible opinion testimony
concerning the complainant’s credibility, when the sole issue was her
credibility.”  It
is generally improper for a witness to offer a direct opinion as to the
truthfulness of another witness and such opinion is therefore inadmissible.  See Schutz v. State, 957
S.W.2d 52, 59 (Tex. Crim. App. 1997).  This type of testimony is inadmissible
“because it does more than ‘assist the trier of fact to understand the evidence
or to determine a fact in issue’; it decides an issue for the jury.”  Yount v. State, 872
S.W.2d 706, 709 (Tex. Crim. App. 1993); Blackwell v. State, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006,
pet. ref’d).  This rule applies to
expert and lay witness testimony alike.  Fisher v. State, 121
S.W.3d 38, 41 (Tex. App.—San Antonio 2003, pet. ref’d).

Appellant complains of two
instances in which Lugo stated that he believed the complainant.  First, on cross-examination, Lugo agreed that
he “lied” to the prosecutors when he told them that he was not living with the
complainant at the time of trial.  In
pertinent part, Lugo testified as follows:

[The
State]:          So, were you also lying
to us when you told us that you helped her go to the police station and report
this case?

 

[Lugo]:                 No. I took her with her mom,
because her mom told me no.  We got to
take him.  It’s hard for me, but he’s my
son and all that.  But he can’t do that
to somebody else.  We got to go turn him
in.  She asked me to take her with [the
complainant] and took her to the station.

 

[The
State]:          So, your testimony is
that you and [appellant’s] own mother took her to the police station to report
this crime?

 

[Lugo]:                 Yes, ma’am.

 

[The
State]:          That’s because you believe [the complainant],
don’t you?

 

[Lugo]:                 Yes.

 

[Trial
Counsel]:    Objection. 

 

[Trial
Court]:        He answered already; so,
overruled.

 

(emphasis added). 
Second, the State questioned Lugo about reporting appellant to law
enforcement authorities, without objection, in relevant part, as follows:

[The
State]:          You wanted to report this
because you knew it was important, right?

 

[Lugo]:                 Yes.

 

[The
State]:          You knew he should get in
trouble for what he did?

 

[Lugo]:                 Uh-huh, it was bad.  How about if he went back and found her
sleeping or something like or something.

 

[The
State]:          So, there’s no doubt in your mind that she was telling you the truth?

 

[Lugo]:                 Uh-huh, and I even heard him
banging on the window when she called me.

 

(emphasis added). 

Appellant also emphasizes that
trial counsel failed to obtain a running objection to Lugo’s testimony.  Appellant recognizes that there “is nothing
in the record explaining [trial] counsel’s strategy for allowing into evidence
inadmissible hearsay, legal conclusions, speculation and opinion by Amaury Lugo
regarding the complainant’s truthfulness.” 
However, he asserts that there is “no conceivable strategy or tactic
that would justify allowing such inadmissible testimony in front of the jury.”  See Miller v. State, 757 S.W.2d 880, 884
(Tex. App.—Dallas 1988, pet. ref’d) (holding trial counsel ineffective based on
failure to object to State’s questions eliciting forensic interviewer’s opinion
on whether child was, in fact, sexually abused and whether child’s report of
sexual abuse was truthful; stating that “we can glean no sound trial strategy
in defense counsel’s failure to object to extensive, inadmissible testimony
concerning the only real issue at trial—complainant’s credibility”); Lane
v. State, 257 S.W.3d 22, 27 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d) (“[e]ven though there is nothing
in the record on appeal explaining [] trial counsel’s subjective trial strategy
for allowing this testimony into evidence, there is no conceivable strategy or
tactic that would justify allowing this inadmissible testimony in front of the
jury”); Sessums v. State, 129 S.W.3d
242, 247–48 (Tex. App.—Texarkana
2004, pet. ref’d) (holding that a direct comment on the complainant’s
truthfulness is absolutely inadmissible and there “is no conceivable strategy
or tactic that would justify allowing this testimony in front of a jury”).  

Here, the sole issue at trial was
the credibility of the complainant.  The
testimony of Lugo constituted a direct opinion on the truthfulness of the
complainant, which was inadmissible.  See Yount, 872 S.W.2d at 708; Sessums, 129 S.W. 3d at 247.  We conclude that, although there is nothing
in the record explaining trial counsel’s strategy for allowing into evidence
testimony by Lugo regarding the complainant’s credibility, there is no conceivable
strategy or tactic that would justify allowing such inadmissible testimony in
front of the jury.  See Lane, 257 S.W.3d at 27–28.  

Having
determined that trial counsel’s performance was deficient, we consider whether
there is a reasonable probability that the result of the proceeding would have
been different.  See Strickland, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068; Andrews, 159 S.W.3d at 101.  A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome.  Strickland,
466 U.S. at 694, 104 S. Ct. at 2068.  

Recently,
in Lopez v. State, this Court found
that the failure to object to inadmissible testimony regarding the credibility
of the complainant constituted deficient performance and that there was a
reasonable probability that the result of the proceeding would have been
different.  315 S.W.3d 90, 101 (Tex.
App.—Houston [1st Dist.] 2010, pet. granted). 
In Lopez, the jury was
“exposed to a barrage of inadmissible testimony” concerning the complainant’s
credibility.  Id. at 102.  There, four of
the State’s six witnesses were permitted to testify extensively as to the child
complainant’s credibility without objection. 
Id. at 101–02.  The jury received testimony from the child’s
aunt, a representative from the Harris County Children’s Assessment Center, the
child’s school counselor, and a police officer regarding the complainant’s
credibility.  Id. at 98–101.  The court
concluded that the testimony of the complainant “was bolstered immeasurably by
the inadmissible testimony” of the witnesses and that appellant “was prejudiced
by the deficiency in counsel’s performance.” 
Id. at 102.  

However, this
case is substantively distinguishable from Lopez
and the cases cited by appellant in support of his argument that he was
prejudiced by his trial counsel’s deficient performance.  Here, we have the testimony of one defense
witness that he “believed” the complainant. 
We do not have a “barrage” of inadmissible testimony provided by the
State in order to support the complainant’s credibility.  Furthermore, Lugo is a lay witness, who had
his own credibility problems.  This is
not a situation where we have multiple expert witnesses and otherwise credible witnesses
testifying as to a child complainant’s credibility.  Additionally, there is photographic evidence
of the complainant’s injuries consistent with her rendition of the events and
resolution of the credibility issue was not necessarily dependent upon the
challenged testimony.  See Lane, 257 S.W.3d at 29.  The jury was presented with the complainant’s
testimony, along with the photographic evidence, and Officer Jackson’s
testimony.  We conclude that appellant
has not proved that there is a reasonable probability that, but for counsel’s
deficiency, the result of the trial would have been different.  Having failed to establish the second prong
of Strickland, we hold that appellant
has not established his claim of ineffective assistance of counsel.

We
overrule appellant’s third point of error. 


Conclusion

          We affirm the judgment of
the trial court. 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Higley.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 22.011(a)
(Vernon Supp. 2010), § 15.01(a) (Vernon 2003). 





[2]
          Appellant cites two cases standing for the
proposition that the introduction of evidence that bolsters the State’s case
constitutes ineffective assistance of counsel. See Ex parte Walker, 777
S.W.2d 427 (Tex. Crim. App. 1989); Hutchison
v. State, 663 S.W.2d 610 (Tex. App.—Houston [1st Dist.]
1983, pet. ref’d).  However, in these
cases, the courts held counsel provided ineffective assistance after reviewing
the evidence developed in a motion for new trial hearing or in a hearing on
petition for habeas corpus where the “reasons” for counsel’s actions did not
justify the actions.  Ex parte Walker, 777 S.W.2d at 427; Hutchinson, 663 S.W.2d at 610.