**Angel Luis CRUZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–05–00243–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 24, 2006.

Discretionary Review Refused Oct. 10, 2007.

Rehearing Overruled March 8, 2007.

Patricia Segura, Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

A jury found appellant, Angel Luis Cruz, guilty of sexual assault, and the trial court assessed punishment at 30 years' confinement. In six points of error, appellant contends (1) the trial court erroneously admitted hearsay evidence; (2) the evidence is legally insufficient to support his conviction because the complainant's testimony was not credible; (3) the evidence is factually insufficient to support his conviction because the complainant's testimony was not credible; (4) the evidence is legally insufficient to support a conviction for aggravated sexual assault[1] because there was no evidence that the gun used during the offense was a firearm; (5) the evidence is factually insufficient to support a conviction for aggravated sexual assault because there was no evidence that the gun used during the offense was a firearm, and (6) the trial court erred by sentencing appellant for aggravated assault when he was charged with, and found guilty of, sexual assault. We affirm the judgment as it relates to the guilt-innocence portion of the trial, but reverse and remand the judgment for a new punishment hearing.

## BACKGROUND

On March 11, 2004, the complainant, Gurleen Kaur, was alone at home when she heard a knock at her door. She had been expecting someone from the electric company because the lights at her home were out. When she opened the door, she saw appellant. He was smiling and holding a piece of paper. He said something to Kaur that she did not understand because of appellant's thick accent. Appellant held up the paper he was holding and looked to the ceiling at the back of Kaur's house. Kaur thought that appellant was saying something about the lights, so she turned around. While she had her back turned, appellant came inside the house and pulled out a gun. Kaur was afraid and thought that she was going to be shot and killed.

Appellant indicated to Kaur that she should be quiet and he forced her to walk further into the house. When they reached Kaur's mother's bedroom, appellant said, "Money, money, give me money." He put on an orange bandana that covered his face up to his nose. Kaur told him that there was nothing in the house to give him, and she pulled out the drawers to her mother's dresser to show him. Appellant started to pull the drawers out himself, but he remembered to first put on gloves. He then made Kaur sit on the bed, while he taunted her by shaking his belt.

Kaur secretly grabbed her cellular telephone and called 9–1–1. She started pleading with appellant to go to another house on Klamath Falls street in the hope that the 9–1–1 operator would discern her location. Kaur then dropped the tele-

1. Appellant was indicted for and convicted of sexual assault, which carries a punishment of between 2 and 20 years. *See* TEX. PEN.CODE ANN. §§ 12.33 & 22.011(f) (Vernon 2003 & Supp.2005). However, appellant was sentenced to 30 years' confinement, which is within the range of punishment for aggravat-

ed sexual assault. *See* TEX. PEN.CODE ANN. §§ 12.32, 22.021(e) (Vernon 2003 & Supp. 2005). Therefore, appellant brings his fourth and fifth points of error challenging his apparent conviction for aggravated sexual assault.

phone because she was afraid appellant would notice it.

When appellant asked Kaur something about the police, she was afraid that he had discovered the 9-1-1 call. Kaur handed the house telephone to appellant and told him to leave and to take the telephone with him so that she could not call the police. She promised appellant that she would not call the police if he would just leave.

Appellant saw a costume jewelry earring on the floor and said, "gold, gold." Kaur looked for some gold, but could not find anything. Appellant brought Kaur back to her mother's bedroom, where he bound her arms and legs with telephone cords. He took a cloth from one of the drawers and put it over Kaur's eyes. He grabbed Kaur's right breast, but she was able to free one hand and push him away. Appellant then tied Kaur's hands much tighter.

Kaur told appellant that there might be some gold in the garage, so appellant made her hop to the garage. Kaur did not find any gold, so appellant freed Kaur's legs so she could walk and they returned to Kaur's mother's bedroom.

Realizing that the police were not going to respond to her 9-1-1 call, Kaur eventually broke free, ran to her room, and locked the door. However, the bottom hinge of the door was broken, so appellant was able to break in very quickly.

Appellant became very angry by Kaur's escape attempt, grabbed Kaur by the neck, pinned her to the wall, and began choking her. After wrestling with Kaur, appellant stood up and stomped on Kaur's neck. Appellant flipped Kaur on her stomach and started stomping on her back. He sat down on Kaur's back, pulled her pajama bottoms down, and squeezed her buttocks. He then pushed two fingers into her anus. Kaur pulled herself up to her knees, but

appellant grabbed her hair and slammed her jaw into the edge of the bed. Appellant also jabbed his knee into the back of Kaur's neck.

When appellant started choking Kaur again, she reached for appellant's gun, which she saw lying on the bed. Kaur was unable to fire the gun because she could not locate the safety, so appellant grabbed it away from her and started choking her again. Kaur was finally able to kick appellant off of her, and the two sat there exhausted.

Appellant said, "Okay, now—now you give me money." Kaur looked for money one more time, but could find none. Appellant took Kaur back to her mother's bedroom, where he made her get in the closet. He said, "Don't call the police or I'll come." After Kaur heard appellant leave, she called a friend, her mother, and finally, the police.

V. Johnson with Harris County Constable, Precinct 5, was dispatched to Kaur's home. He talked to Kaur, who was very upset and had red marks on her neck and a scratch on her forehead. Kaur told Johnson that she could not swallow. Some of the rooms in the house had been ransacked. Kaur repeatedly asked to be allowed to change her clothes, which led Johnson to believe that Kaur might have been sexually assaulted. However, Kaur seemed ashamed and did not want to talk about it.

Three days after the robbery, Kaur's cousin, Jaswinder Singh, who lived two blocks away from Kaur, was sitting near the pool in front of his house when he noticed a car circling through the neighborhood. Singh noticed that the person in the car looked like the person his cousin had described as her assailant, so he followed the car. The car traveled from Singh's street to Kaur's street and then continued circling the neighborhood sever-

al times. Singh thought this was suspicious, so he wrote down the license plate number of the car.

The next day, Sergeant J.E. Cashion with Harris County Constable, Precinct 5, was dispatched to a house near Kaur's house. Kaur's mother was there and was extremely upset. She told Cashion that, as she was walking home from Singh's house, she had been followed by a black Nissan Altima, which she thought might be related to the robbery. Singh, who arrived at the house shortly after Cashion, gave Cashion the license plate from the car he had seen the day before. Cashion "flagged the license plate number" so that any officer could see that it was linked to a suspicious person report.

The next day, P. Gerren with Harris County Constable, Precinct 5, was on patrol less than a mile from Kaur's house when he saw a black Altima with the license plate number that had been "flagged." He pulled the car over and noticed that its registration had expired. Appellant, the driver, spoke little English and had a very strong accent. He had a pair of gloves in his pockets and a loaded .380 caliber semi-automatic pistol under the seat in his car. Appellant was arrested for unlawfully carrying a weapon and the car was searched. In the trunk, the police found several real estate forms and a fanny pack that contained pry bars and other tools.

After appellant was arrested, Detective C. Brown of the Harris County Sheriff's Department, placed appellant's picture in a photospread and showed it to Kaur. Kaur positively identified appellant as her assailant.

## HEARSAY

In point of error one, appellant contends the trial court erred by admitting hearsay evidence. Specifically, appellant contends the trial court erred by permitting Sergeant Cashion to testify that the complainant's mother, Sarbjit Kaur, told him that she saw a black Altima car following her in the neighborhood. The State responds that Kaur's mother's statements were admissible, through Cashion's testimony, as excited utterances.

During Cashion's testimony, the following exchange took place:

[Prosecutor]: Now, when you met with [Kaur's mother], what was she like? What was her demeanor like?

[Cashion]: She was very upset and scared.

[Prosecutor]: And were you able to determine why she was scared?

[Cashion]: Yes, ma'am. After speaking with *her—she was walking home from her brother [sic] from Canaan Bridge over to Klamath Falls. And as she was proceeding west on Klamath Falls, she noticed a black vehicle following her.*

[Prosecutor]: And how many time did she see that vehicle?

[Cashion]: *About three times.*

[Prosecutor]: Why was her attention drawn to the vehicle, if you know?

[Cashion]: Because the vehicle—

[Defense Counsel]: Objection, Judge. Calls for hearsay and speculation.

[The Court]: Lay a foundation for it.

[The Prosecutor]: You said she was upset when you spoke with her?

[Cashion]: Right.

[The Prosecutor]: Okay. And how could you tell she was upset?

[Cashion]: Well, she was nervous and very shaken at the mere fact that—trying to determine from her exactly what was transpiring out there at the scene.

[Prosecutor]: Okay. And while she was in this upset or excited state, did she tell

you what drew her attention to the black vehicle?

[Cashion]: Right, sure did. That—

[Defense Counsel]: Objection, Your Honor. That calls for a hearsay answer.

[The Court]: That's overruled.

[Cashion]: *That when she was walking home, that the vehicle was following real slowly behind her. And as she was getting close to her house, the vehicle drove right past and she at that time recognized that vehicle as possibly being connected to the robbery.*

Appellant did not voice a hearsay objection until *after* Cashion testified that Mrs. Kaur told him that she had been followed by a black car when she was walking home from her brother's house, and that she had seen the car pass three times. The only additional information that came after appellant's hearsay objection was Mrs. Kaur's statement that she believed that the vehicle may have been involved in the robbery.

 In order to preserve error for appellate review, a timely specific objection must be made and a ruling obtained. *See* Tex.R.App. P. 33.1(a)(1)(A). In order to be considered timely, the objection must be made at the first opportunity or as soon as the basis of the objection becomes apparent. *See Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990); *Worthington v. State*, 859 S.W.2d 530, 532 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd). An objection made after the prosecutor has elicited the testimony comes too late. *See Angelo v. State*, 977 S.W.2d 169, 177 (Tex.App.-Austin 1998, pet. ref'd). Appellant did not preserve error on his hearsay objection because he did not object until after the prosecutor elicited the testimony about Mrs. Kaur being followed in her neighborhood by a black car.

 We further conclude that, even if the trial court erred in admitting this evidence, it was harmless error. To determine whether the erroneous admission of evidence amounts to reversible error, we look to Texas Rule of Appellate Procedure 44.2(b), governing non-constitutional error in criminal cases. *See* Tex.R.App. P. 44.2(b). Neither appellant nor the State bears the burden of demonstrating whether appellant was harmed by the trial court's error. *See Johnson v. State*, 43 S.W.3d 1, 5 (Tex.Crim.App.2001). Rather, it is this Court's responsibility to assess, from the context of the error, whether the judgment requires reversal because the error affected appellant's substantial rights. *See id.* Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 3–4. In this case, we have positive eyewitness testimony from the complainant identifying appellant as her assailant. That the complainant's mother saw a black car following her through the neighborhood and thought it might be related to the robbery adds little to the evidence. Additionally, Kaur's cousin, Singh, also testified that he had seen a black car circling the neighborhood and that he had written down the license plate number, which was the same as the license on the car appellant was driving when he was arrested. In light of the other evidence submitted at trial, we cannot say that the admission of the alleged hearsay, if erroneous, affected appellant's substantial rights.

We overrule point of error one.

## SUFFICIENCY OF THE EVIDENCE

 In points of error two and three, appellant contends the evidence is legally and factually insufficient to support the verdict because the complainant's testimony identifying him as her assailant is not

credible. We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict and determining whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The trier of fact is the sole judge of the weight and credibility of the evidence. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000). Thus, when performing a legal sufficiency review, we may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999). We must resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

In a factual sufficiency review, we view all of the evidence in a neutral light, and we set the verdict aside only if "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Vodochodsky v. State*, 158 S.W.3d 502, 510 (Tex.Crim.App.2005) (internal quotation marks omitted). In conducting such a review, we consider all of the evidence weighed by the jury, comparing the evidence that tends to prove the existence of the elemental fact in dispute to the evidence that tends to disprove it. *Id.* We may disagree with the jury's determination even if probative evidence exists to support the verdict, but we should avoid substituting our judgment for that of the factfinder. *Id.* An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent. Tex. Pen.Code Ann. § 22.011(a)(1)(A) (Vernon 2003 & Supp.2005).

Here, the evidence, viewed in the light most favorable to the verdict, established the elements of the offense of sexual assault. The complainant testified that as she was struggling with appellant, he sat down on her back, pulled down her pajama bottoms, and squeezed her buttocks, before pushing two fingers into her anus. The testimony of a victim, standing alone, is sufficient to support a conviction for sexual assault. *Villalon v. State*, 791 S.W.2d 130, 133 (Tex.Crim.App.1990); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd). Moreover, as discussed, the jury is the sole judge of the credibility of the witnesses at trial. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Evidence is legally sufficient as long as it provides the requisite proof needed to satisfy the elements of the offense charged. *Bousquet v. State*, 47 S.W.3d 131, 137 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). Accordingly, we hold that the evidence was legally sufficient to sustain appellant's conviction for the offense of sexual assault.

In support of his factual sufficiency argument, appellant reiterates that "the complainant's testimony incriminating the appellant was simply not credible." Appellant points out that Kaur could not identify the handgun found on appellant at the time of his arrest, that she was never asked to identify the gloves found in appellant's pockets, and that she told the police dispatcher that her assailant was approximately five feet four inches tall and weighed 120 pounds, when appellant is, in fact, larger.

Kaur testified that the gun appellant used was silver with an orange handle. When she was shown State's Exhibit 22, the gun recovered from appellant's car, Kaur testified that she did not recognize it. Appellant contends that this inability to recognize the gun recovered from appellant's car undermines Kaur's credibility, such that the evidence is factually insufficient. We disagree. Kaur's inability to recognize the gun could simply mean that the gun recovered from appellant's car 4 days after the robbery was not the same gun he used during the robbery.

Appellant also argues that Kaur's identification of him was not credible because she said that he was about five feet four inches tall and weighed about 120 pounds, when, actually appellant was larger. However, Kaur admitted that she was not very good at estimating height and weight, and that when she was describing appellant to the operator she actually said, "120, 190, 160, I don't know," and that she was just "throwing numbers out there" because she was frustrated by her inability to estimate his height and weight for the operator.

The evidence also showed that Kaur was in the house with appellant for approximately 45 minutes, and that for much of the time she was only inches away from appellant. Part of the time, appellant was wearing an orange bandana, but he later pulled it down or it fell down, giving Kaur a clear view of his face. Appellant positively identified appellant as her assailant in a photospread prepared by the police. Appellant had a heavy accent, just as Kaur had described. When asked to identify appellant at trial, Kaur pointed to appellant and said, "That's actually definitely him, yes."

Viewing the relevant evidence in a neutral light, favoring neither the State nor appellant, and with appropriate deference to the jury's credibility determinations, we conclude that the evidence supporting the verdict is not too weak to support the jury's finding of guilt beyond a reasonable doubt and the weight of the evidence contrary to the verdict is not so strong that the State could not have met its burden of proof on the issue of appellant's identity as the perpetrator. *Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). Accordingly, we hold that the evidence on the issue of identity is factually sufficient to support appellant's conviction for the offense of aggravated sexual assault.

We overrule points of error two and three.

## PUNISHMENT ASSESSED OUTSIDE THE PROPER RANGE

Appellant was indicted for sexual assault, with a separate paragraph alleging use of a deadly weapon.[2] Sexual assault carries a punishment of confinement between two and 20 years. *See* TEX. PEN.

2. The indictment provided as follows:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, ANGEL LUIS CRUZ, HEREAFTER STYLED THE Defendant, heretofore on or about MARCH 11, 2004, did then and there unlawfully, intentionally and knowingly cause the penetration of the anus of GURLEEN KAUR, hereinafter called the Complainant, by placing his finger in the anus of the Complainant, without the consent of the Complainant, namely the

Defendant compelled the Complainant to submit and participate by threatening to use force and violence against the Complainant, and the Complainant believed that the Defendant had the present ability to execute the threat.

It is further presented that at the time the Defendant committed the felony offense of SEXUAL ASSAULT, on or about March 11, 2004, as hereinabove alleged, he used and exhibited a deadly weapon, namely a FIREARM during the commission of and during the immediate flight therefrom.

CODE ANN. §§ 12.33 & 22.011(f) (Vernon 2003 & Supp.2005).

The jury charge at the guilt-innocence phase asked the jury to determine whether appellant was guilty of sexual assault. The jury returned a guilty verdict. The jury charge also included a special issue question asking the jury to determine whether appellant used or exhibited a deadly weapon "during the commission of the offense for which he has been convicted or during the immediate flight therefrom." The jury found that appellant had used a deadly weapon.

During the charge conference on punishment, the prosecutor urged the trial court to charge the jury on aggravated sexual assault—not sexual assault—based on the affirmative deadly weapon finding. The following exchange took place:

[Prosecutor]: I didn't catch this sexual assault. It says they made an affirmative finding of a deadly weapon. That increases the punishment range to a first-degree under the Code. And we've—in the punishment range in the charge is two to 20.

[The Court]: Yeah. I recognized that.

[Prosecutor]: I just caught that, but they made that deadly weapon finding and so under the Code, it increases it to a first-degree.

[Defense Counsel] I agree, but I didn't catch it.

[The Court]: Yeah. Okay.

(End of Charge Conference)

[The Court]: We've made a mistake in the charge. Let's take the jury out.

[The Court]: Okay. Allright. Ladies and gentlemen, I apologize. I'll give you a brief explanation. I had the punishment range for sexual—because there was a special issue finding, it is aggravated sexual assault. So, the punishment range is different. But the punishment ranges for aggravated sexual assault and aggravated robbery are the same. They're both first degrees. The punishment range I'll read to you. And I've already read everything else to you and I will not read it again. And we'll get right to argument afterwards.

Afterwards, the jury was charged on aggravated sexual assault at the punishment phase of trial and was instructed that the punishment range for aggravated sexual assault was between five and 99 years. *See* TEX. PEN.CODE ANN. §§ 12.32 & 22.0021(e) (Vernon 2003 & Supp.2005). The jury assessed punishment at 30 years' confinement.

The judgment, however, indicates that appellant was convicted of 2nd degree felony sexual assault, makes no affirmative finding that a deadly weapon was used, yet sentences appellant to 30 years' confinement.

In his sixth point of error, appellant argues that the sentence is void because he was sentenced outside the proper range of punishment for sexual assault. The State responds that (1) appellant waived the alleged error because defense counsel did not object to the aggravated sexual assault charge to the jury at the punishment charge conference; (2) that the error is harmless because appellant was also sentenced to 30 years' confinement on the aggravated robbery charge; and (3) that this Court should reform the judgment to show that appellant was actually charged with and convicted of aggravated sexual assault.

■ We begin by noting that a sentence that is not within the statutory punishment range for an offense is void, and no objection is required to preserve error. *See Ex parte Seidel,* 39 S.W.3d 221, 225 n. 4 (Tex. Crim.App.2001). Similarly, there is no authority for holding such an error harmless.

Therefore, the issue the Court must decide is whether the judgment is void, i.e., whether the judgment imposed a punishment outside the proper statutorily-prescribed range.

■■■ To make this determination, we must decide whether a deadly weapon finding in a sexual assault case is, as the State argues, a *de facto* conviction for aggravated sexual assault. Therefore, we examine the elements necessary to prove a deadly weapon special issue, and then determine whether those elements necessarily include the same elements required to prove aggravated sexual assault. If a deadly weapon enhancement can be proved without meeting the requirements necessary to prove aggravated sexual assault, then the two things are not the same, and the jury was erroneously allowed to consider the punishment range for aggravated sexual assault.

Under article 42.12 § 3g(a)(2) of the Texas Code of Criminal Procedure, a deadly weapon finding may be entered if "it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was *used or exhibited during the commission of a felony or during the immediate flight therefrom* . . . ." Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.2005) (emphasis added).

■■■ In contrast, the aggravated assault statute provides a sexual assault is considered an aggravated sexual assault if the defendant "*uses or exhibits a deadly weapon in the course of the same criminal episode.*" Tex. Pen.Code Ann. § 22.021(a)(2)(A)(iv) (Vernon 2003 & Supp. 2005). For purposes of the aggravated sexual assault statute, a "criminal episode" begins when the attacker in any way restricts the victim's freedom of movement and it ends with the final release or escape of the victim from the attacker's control.

*Burns v. State,* 728 S.W.2d 114, 116 (Tex. App.-Houston 14th Dist.1987, pet. ref'd).

Although these two definitions are similar, they are not the same. For example, an affirmative deadly weapon finding may be made even if the defendant does not use or display the weapon until after his victim has escaped or been released, and the defendant is in *"immediate flight"* from the scene of the offense. In contrast, to be convicted of aggravated assault, a defendant must use or exhibit the deadly weapon while restricting the victim's freedom—once the victim is released or escapes the defendant, the criminal episode ends.

Because a deadly weapon finding under article 42.12, § 3g(a)(2) is not necessarily the same as using or exhibiting a deadly weapon under the aggravated assault statute, the trial court erred by charging the jury that it could assess defendant's punishment as an aggravated sexual assault. Similarly, the trial court erred in sentencing appellant to 30 years' confinement because the proper range of punishment for sexual assault is between two and 20 years. Appellant's sentence was outside the statutory range, and, therefore, was void. *See Ex parte Seidel,* 39 S.W.3d at 225.

Accordingly, we sustain appellant's sixth point of error.

In points of error four and five, appellant argues that "assuming this Court finds that the appellant was in fact convicted of aggravated sexual assault by the jury, during the guilt or innocence phase of the trial, the issue remains as to whether the evidence supports such a verdict." Specifically, appellant contends that there is legally and factually insufficient evidence to show that he used or exhibited a firearm as a deadly weapon. Because we have held that appellant was not convicted of aggravated sexual assault, we need not

address points of error four and five, and decline to do so.[3]

## CONCLUSION

Having overruled appellant's first, second, and third points of error, we affirm his conviction. However, because we sustained appellant's sixth point of error regarding the proper range of punishment, we reverse the trial court's judgment on punishment and remand to the trial court for a new punishment hearing for the second degree felony of sexual assault with a deadly weapon finding. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2005).

3. Appellant does not complain on appeal that there was insufficient evidence to support the affirmative finding on the deadly weapon special issue.