Opinion issued December 30, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00691-CR

———————————

Emiliano Escobar, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 177th District Court

Harris County, Texas



Trial Court Case No. 1220893

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Emiliano Escobar of aggravated sexual assault.  See Tex. Penal Code Ann. §§ 22.011 (a)(1)(A), (b)(1)–(2); 22.021 (a)(1)(A)(i),
(2)(A)(ii)–(iii) (Vernon Supp.
2010).  The court assessed punishment at
25 years’ imprisonment.  See Tex.
Penal Code Ann. §
22.021(e) (Vernon Supp. 2010).  In his
sole issue, Escobar contends that the evidence is factually insufficient to
support his conviction.  We affirm.

Background

          The complainant, P.A., and
her friend, A.C., met Escobar outside the El Huracan nightclub on July 6,
2008.  P.A. and A.C. had gotten a ride to
the club from a friend and were waiting outside the club for other friends to
arrive.  P.A. and A.C. testified that
they grew increasingly uncomfortable as they waited for their friends to arrive
because men leaving the club were making suggestive remarks to them.  They decided to leave and go to a friend’s
house, but they did not want to walk because it was late.  P.A. and A.C. met Escobar as he was leaving
the club.  He offered to give them a
ride, and P.A. and A.C. testified that they accepted because Escobar did not
appear intoxicated and seemed trustworthy. 
P.A. testified that she sat in the back passenger seat of Escobar’s SUV and
A.C. sat in the front passenger seat.  Escobar
removed a pellet rifle from the floorboard of the driver’s seat, and placed it in
his lap.  P.A. and A.C. were startled
upon seeing the rifle but did not get out of the vehicle.  P.A. testified that she asked Escobar to put
the gun in the back.  Escobar handed it
to P.A., and she placed it in the back of the vehicle.  

Escobar drove out of the parking
lot and north onto Interstate 45.  P.A.
and A.C. protested, each telling Escobar that their friend’s house was in the
opposite direction.  Escobar continued to
speed in the wrong direction for between 10 to 15 minutes.  P.A. testified that when she and A.C. asked
Escobar where he was taking them, he smiled and replied “Yeyo,” a Spanish term
for cocaine.  P.A. and A.C. called and
sent text messages to friends to tell them where they were and what was
happening.  Escobar left the highway and sped
onto Parramatta Lane.  Upon reaching a
dead end, Escobar drove over the curb and down a path into a wooded area.  A.C. placed a call to 911.  Both P.A. and A.C. testified that they fled
the SUV while Escobar was driving through the woods.

Without turning the engine off,
Escobar stopped the vehicle and chased P.A. and A.C.  He reached A.C., pulled her to the ground, tore
her clothing, climbed on top of her, and hit her repeatedly.  A.C. screamed and told P.A. to hit
Escobar.  P.A. complied, and A.C. was
able to escape.  Both P.A. and A.C. again
ran away from Escobar. 

Escobar caught P.A.’s leg and
pulled off one of her shoes.  P.A.
testified, “He grabbed me from the legs and then from there he pulled me and
then he, like, you know, placed his body on top of me.”  P.A. continued to struggle, but Escobar was
able to remove her clothing.  Escobar
pinned P.A. to the ground and hit her face. 
P.A. briefly escaped, but she fell in the brush.  She testified that Escobar grabbed her leg
and threatened her, stating, “You’re going to die. You’re going to die.”  P.A. further testified that while Escobar was
raping her, he repeatedly stated, “I’m going to bury you, ” and “I’m going to
bury you in that bayou.”  Escobar and P.A.
saw lights in the distance, and P.A. testified that Escobar ran away and told
her to follow him.  P.A. ran toward the
lights until she reached the responding officers.

          Deputies
J. Bullock and J. Soto testified that they responded to a disturbance call on
the night of the assault and that they were among the first to arrive at the
scene.  Upon arriving, Bullock and Soto
encountered A.C., who, according to Bullock’s testimony, informed the officers
that her friend was being raped in the woods. 
The officers observed P.A. running toward them with no clothing,
screaming, “He’s going to kill me.” 
After placing P.A. in an officer’s vehicle, Soto and Bullock reentered
the woods with Deputy C. Anderson of the K-9 unit.  After a brief search, the officers discovered
Escobar hiding in dense brush.  The
officers handcuffed Escobar and escorted him out of the woods. 

P.A. was taken by ambulance to
Houston Northwest Medical Center where L. Mahoney, a certified sexual assault
nurse, performed a sexual assault examination on P.A.  Mahoney interviewed P.A. and conducted a
head-to-toe examination.  She observed
numerous marks and scratches on P.A.’s entire body and a significant bruise on
her arm.  She did not find any evidence
of bruising or trauma during the genital exam, but she testified that the
absence of such evidence was not unusual when the victim was sexually active prior
to the occurrence.  Mahoney testified
that the results of P.A.’s medical examination and her demeanor throughout the
exam were consistent with her allegations of sexual assault.

Escobar testified that he left the
club at approximately 1:45 a.m. after consuming three beers.  He stated that P.A., whom he believed to be
under the influence of drugs, and A.C. approached him asking for cocaine, and
when he replied that he did not have any, they asked if he knew where to find
some.  Escobar responded that he did and
agreed to take them there.  He testified
that he drove P.A. and A.C. to Imperial Valley where he believed they could
purchase cocaine.  Escobar testified that
A.C. told him that she wanted to go home, so he dropped her off at the entrance
to the wooded area.  He then stopped his
vehicle in the woods because P.A. had been caressing and touching him.  He stated that she had indicated a desire to
be alone with him in a secluded area. 
Escobar denied raping P.A. and testified that the sexual contact he had
with her was consensual.  He further testified
that when he saw the police flashlight, he ran into the woods because he was
afraid of being arrested for having sex in public.

The jury convicted Escobar of aggravated
sexual assault, and the court assessed punishment at 25 years in prison.  Escobar timely filed a notice of appeal. 

Analysis

Escobar challenges the sufficiency of the evidence to
support his conviction.  In particular, he
contends that his testimony concerning the facts was more compelling than that
of the State’s witnesses.

I.                 
Standard of review

Due process requires a court reviewing the sufficiency of
evidence to support a criminal conviction to determine “whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.”  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  Our state-law standard for reviewing the
factual sufficiency of the evidence mirrors the standard required by the United
States Constitution.  See Brooks v. State, 323 S.W.3d 893, 894–95
(plurality op.), 926 (Cochran, J., concurring) (Tex. Crim. App. 2010).  The jury is the exclusive judge of the
facts.  Tex.
Crim. Proc. Code Ann. arts. 36.13, 38.04 (Vernon 2007 & 1979); Brooks, 323 S.W.3d at 899.  Accordingly, “[a]ppellate courts should
afford almost complete deference to a jury’s decision when that decision is
based upon an evaluation of credibility.” 
Lancon v. State, 253 S.W.3d
699, 705 (Tex. Crim. App. 2008).  “The
jury is in the best position to judge the credibility of a witness because it
is present to hear the testimony, as opposed to an appellate court who relies
on the cold record.”  Id.

II.              
Sexual assault

          A person commits aggravated
sexual assault if he “intentionally or knowingly causes the penetration of the
anus or sexual organ of another person by any means, without that person’s
consent,” and the person “by acts or words places the victim in fear that
death, serious bodily injury, or kidnapping will be imminently inflicted on any
person, [or] by acts or words occurring in the presence of the victim threatens
to cause the death, serious bodily injury, or kidnapping of any person.”  Tex.
Penal Code Ann. § 22.021 (a)(1)(A)(i), (2)(A)(ii)–(iii).

          Escobar argues that the
evidence was insufficient to support a guilty verdict.  Escobar points specifically to the lack of
evidence of vaginal trauma or semen found during the rape exam.  He also argues that the complainant and A.C.
“told an unlikely version of getting into a car with a total stranger,” and
that his testimony “was much more logical and cogent and in line with the
physical evidence.”

          First,
Escobar argues that the evidence is factually insufficient because there was no
evidence of vaginal trauma or semen found during the sexual asault exam.  P.A. testified, however, that Escobar forcibly
opened her legs and penetrated her with his penis.  Mahoney conducted P.A.’s sexual assault exam
and testified that it was not unusual for there to be no evidence of vaginal
trauma when the victim had been sexually active prior to the sexual
assault.  Mahoney further testified that P.A.’s
demeanor and physical appearance at the time of the exam were consistent with P.A.’s
allegations of sexual assault.  Finally, the
absence of semen is consistent with Escobar’s own testimony that he did not
finish the sex act, and in any case, culmination of the act is not an element
of aggravated sexual assault.  See id.  Based on the witnesses’ testimony, the jury
could have reasonably believed that, due to the circumstances of the assault, P.A.
was sexually assaulted despite the lack of physical trauma to her genitalia and
the absence of semen found during the sexual assault exam.  See,
e.g., Washington v. State, 127
S.W.3d 197, 205 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d).

Second, Escobar argues that the
evidence is insufficient because the State’s witnesses’ testimony presented an
“unlikely version” of events that “stretched credibility,” and the jury therefore
failed to properly weigh the credibility of the witnesses.  The jury heard P.A.’s testimony, corroborated
by A.C., that both women wanted to leave the bar, that they were uncomfortable
walking to their friend’s house in the dark, and that Escobar appeared
trustworthy and polite when he offered them a ride.  Both women also testified that Escobar drove
them to a secluded area, against their will, and assaulted P.A. and A.C. when
they fled.  Conversely, Escobar testified
that P.A. and A.C. were the first to approach him and that they asked him for
cocaine.  He further testified that P.A. was
caressing him and touching him and that she wanted to have sex with him.  The physical evidence—torn clothing, bruises, and scratches on both P.A.
and A.C.—is all
inconsistent with Escobar’s version of the events.  The 911 recording and the evidence of P.A.’s
demeanor as described by Mahoney and the responding officers are also
inconsistent with Escobar’s testimony.  

          Escobar’s
challenge to the sufficiency of the evidence is based on the credibility of
witnesses and the weight given to their testimony by the jury— issues upon which this Court must defer to the
factfinder.  See Lancon, 253 S.W.3d at 705.  The jury was free to believe the complainant’s
testimony and to disbelieve Escobar’s testimony.  See McKinny
v. State, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.] 2002, no
pet.).  Moreover, the victim’s testimony
alone is sufficient evidence to support a conviction in a sexual assault
case.  Jones v. State, 817 S.W.2d 854, 856–57 (Tex. App.—Houston [1st
Dist.] 1991, no pet.).  Considering all
of the evidence in the light most favorable to the prosecution, we conclude
that the jury could have found beyond
a reasonable doubt that Escobar committed all of the essential elements of aggravated
sexual assault.  See, e.g., Cruz v. State, 238 S.W.3d 389, 395–96 (Tex. App.—Houston [1st Dist.]
2006, pet. ref’d) (holding that complainant’s testimony was sufficient to
support conviction of aggravated sexual assault).  We therefore hold that the evidence is
sufficient to sustain the jury’s guilty verdict, and we overrule Escobar’s sole
issue.

Conclusion

          We affirm the judgment of the trial
court.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

 

Panel
consists of Chief Justice Radack and Justices Massengale and Mirabal.*

Do
not publish.  Tex. R. App. P. 47.2(b).











*        The
Honorable Margaret Garner Mirabal, Senior Justice, Court of Appeals for the
First District of Texas, participating by assignment.