Opinion filed July 25, 2013



In The

# Eleventh Court of Appeals

_____

No. 11-11-00223-CR

_____

## WILLIAM MORRIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-37,542**

## MEMORANDUM OPINION

The jury convicted William Morris of aggravated sexual assault. The trial court found two enhancement paragraphs to be true and assessed Appellant's punishment at confinement for life. We affirm.

## The Charged Offense

A person commits the offense of aggravated sexual assault if the person "intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means, without that person's consent" and "causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode." TEX. PENAL CODE ANN. § 22.021(a)(1)(A); (a)(2)(A)(i) (West Supp. 2012). In this case, the indictment alleged that, on or about June 17, 2010, Appellant "did then and there intentionally and knowingly cause the penetration of the female sexual organ of ʻVivian' (pseudonym), without the effective consent of ʻVivian,' and having caused serious bodily injury to ʻVivian' during the course of the same criminal episode."[1]

## Issues Presented

Appellant presents two issues for review. In his first issue, Appellant contends that the trial court erred when it denied his motion for instructed verdict because the evidence was insufficient to establish that his act of penetration of Vivian's sexual organ occurred without Vivian's consent and because the evidence was insufficient to establish that he sexually assaulted Vivian and caused serious bodily injury to her during the same criminal episode. In his second issue, Appellant contends that the trial court erred when it submitted, in the jury charge, a definition of "without consent" that was not contained in the indictment.

## Denial of Instructed Verdict

A challenge to a trial court's denial of a motion for instructed verdict is reviewed under the same standard that is used to review a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). We review the sufficiency of the evidence under the standard of

---

[1]Vivian's actual name was disclosed and used during trial. However, we will refer to her as "Vivian" in this opinion to protect her identity.

review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

Vivian testified that she and Appellant were in an on-again, off-again relationship for about three years. Appellant lived with Vivian for four or five months and then moved out of her house. After Appellant moved out of the house, Appellant and Vivian still had a romantic relationship. Vivian said that she and Appellant had sex two to four times a week. Vivian said that she loved Appellant.

On June 16, 2010, Vivian worked at her job as a housekeeper at Studio 6. She testified that she got home from work between 4:00 p.m. and 5:00 p.m. She said that she drank four or five beers and then fell asleep on her couch. Vivian said that Appellant called her around midnight. Appellant asked her whether he could come see her. Vivian told him that he could. Appellant then went to Vivian's house. Appellant and Vivian went into Vivian's bedroom and had consensual sexual intercourse. After they finished, Appellant told Vivian to take him home. Appellant and Vivian put their clothes on. Vivian said that she was standing up and that Appellant was sitting down on the bed. Vivian testified that Appellant got mad, yelled at her, accused her of having sex with other men, and then slapped her in her face. Vivian testified that Appellant then accused her of having sex with his

3

brother. Vivian said that Appellant slapped her in her face again. Vivian had a Taser gun in her pocket. She said that she always kept the Taser gun with her. She put the Taser gun to Appellant's side, but before she could activate it, Appellant took it away from her. Vivian testified that Appellant "got real mad" and that "he slapped [her] so hard that he knocked [her] to the floor." She said that Appellant put the Taser gun on her but that "it didn't go off."

Vivian said that Appellant grabbed her hair and dragged her from her bedroom to the living room. She said that Appellant picked her up by her hair and stood her up. Appellant and Vivian went outside and got into Vivian's car. Vivian testified that she got into the car with Appellant because she could not outrun him. Vivian believed that, if she had tried to run, Appellant would have caught her and probably beat her more. She said that Appellant had hit her on several prior occasions. Vivian said that she loved Appellant and had hoped he would change. Vivian's goal was to get Appellant to his house so that she could get away from him.

Vivian drove Appellant to his house. After they arrived, Appellant ordered her to get into the passenger's seat of the car. She complied with Appellant's order. Appellant drove the car to a running trail at a park. Vivian said that Appellant told her to take off her clothes and made her get into the backseat of the car. Vivian testified that Appellant "forced himself on [her]" in the backseat. She said that she did not fight or struggle with Appellant because it would have made things worse. Vivian guessed that Appellant "got satisfied" because he let her sit up. Vivian testified that Appellant put her head down, held it down, and made her perform oral sex on him. Vivian said that she was very scared and that she could not fight back. She said that Appellant finally let her put on her clothes. Appellant got dressed and told Vivian to take him home. Vivian took Appellant home, and Appellant got out of the car.

4

Vivian testified that she was bleeding from her lip. She knew that she needed to go to the hospital to get stitches on her lip. She went to Medical Center Hospital. Vivian arrived at the hospital at about 5:15 a.m. Vivian said that she told people at the hospital that Appellant had beaten her up. She testified that she also told a lady at the hospital that Appellant had raped her. Vivian was taken to the emergency room.

Rita Allen, a nurse at the hospital, saw Vivian in the emergency room. She said that Vivian had numerous bruises on her face. Vivian had multiple cuts on her lips. Her lips, mouth, and tongue were swollen, and her mouth was bleeding. Vivian's upper lip required stitches. Allen testified that Vivian got into a fetal position and continuously cried in the emergency room. Vivian told Allen that Vivian's boyfriend had taken her to a park and had raped her.

Odessa Police Corporal Chad Hewitt testified that, on June 17, 2010, he was dispatched to Medical Center Hospital in reference to a sexual assault. He arrived at the hospital at about 6:22 a.m. He said that Vivian was the alleged victim of the sexual assault. Corporal Hewitt saw Vivian. Corporal Hewitt said that Vivian was "badly beaten," that she was crying, and that she was very emotional. Vivian's face was very swollen, and her eyes were almost swollen shut. Vivian also had injuries to her arms. Corporal Hewitt said that Vivian told him that Appellant slapped her in her bedroom, that Appellant hit her at the park, that Appellant told her he was going to have sex with her, and that Appellant told her he was going to beat her if she did not have sex with him.

The morning of June 17, 2010, Odessa Police Officer Brad Cline was dispatched to Appellant's house to arrest Appellant. Officer Cline contacted Appellant at the house. At that time, Appellant was wearing underwear. Officer Cline observed what appeared to be blood stains on Appellant's underwear. Officer Cline arrested Appellant at about 7:15 a.m.

5

Also on June 17, 2010, Katrina Thomasson, a forensic nurse, performed a sexual assault examination on Vivian in the emergency room. Thomasson described Vivian's injuries as ruptured vessels under her right eye, bruising under her eyes, a bruise on her jaw, swollen lips, multiple lacerations on her lips, a swollen mouth, lacerations inside her mouth, and bruises and lacerations on other parts of her body. Thomasson testified that she could not position Vivian's legs in the manner required for an internal vaginal examination because Vivian was in too much pain.

Clinton Pace, M.D., a trauma surgeon at Medical Center Hospital, also saw Vivian. Dr. Pace testified that Vivian had multiple contusions, swelling, and bruising all over her face. A CT scan of Vivian's head revealed that she had bilateral subdural hematomas, which meant that she was bleeding in the brain. Dr. Pace said that a subdural hematoma is a "very serious" and "potentially life threatening" injury. He said that blunt traumatic force can cause such bleeding. Ultimately, surgery was performed to remove a blood clot that was pressing on Vivian's brain. Dr. Pace testified that Vivian could have died had she not had the surgery.

Appellant testified that he did not sexually assault Vivian. Appellant said that, on June 16, 2010, he arrived at Vivian's house at about 9:30 p.m. He said that he planned to spend the night with Vivian at her house. Appellant said that, at about 9:45 p.m., they had consensual sex in Vivian's bedroom. While they were having sex, Vivian heard a noise "out front." Appellant said that Vivian got out of bed to see what had caused the noise. In the meantime, Appellant put his clothes on and sat on the bed. Appellant said that Vivian returned to the bedroom, said that nobody was there, and told him to come back to bed. Appellant testified that he had been in a fight with Vivian's son and her son's friend five days earlier. Appellant said that he continued to sit on the bed so that he could try to see

6

whether Vivian's son and his friend had come into the house. While Appellant sat on the bed, he smoked a cigarette. He said that Vivian took some hits on the cigarette and then passed it back to him.

Appellant testified that, out of the blue, Vivian stuck him in his chest with a Taser gun and tased him. He said that he fell across Vivian's lap and that he could not move or talk for fifteen to twenty seconds. Appellant testified that he and Vivian had not been arguing before she used the Taser gun on him. Appellant said that, when he "popped out of that tase, [he] stood up [and] slapped [Vivian] as hard as [he] could." According to Appellant, Vivian said that she was sorry and that she was "just drunk." Appellant testified that Vivian drank "24/7."

Appellant testified that he told Vivian to take him home. Appellant said that Vivian told him to drive because she had had too much to drink. Appellant testified that he drove to his house and then got out of the car. He said that Vivian pulled on him and that she asked him not to leave. Appellant said that he got back in the car and drove it into the driveway. He testified that he and Vivian had consensual sex in the backseat of the car and that Vivian willingly performed oral sex on him in the backseat of the car.

Appellant said that he slapped Vivian one time during the night in question. He admitted that he had slapped her on prior occasions.

Appellant first contends that the evidence was insufficient to show that he penetrated Vivian's sexual organ without her consent. Section 22.021(c) of the Penal Code provides that "[a]n aggravated sexual assault under this section is without the consent of the other person if the aggravated sexual assault occurs under the same circumstances listed in Section 22.011(b)." Section 22.011 defines sexual assault offenses. PENAL § 22.011 (West 2011). Section 22.011(b) provides in relevant part that a sexual assault is without the consent of the other person if (1) "the actor compels the other person to submit or participate by the use of

7

physical force or violence" or (2) "the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat." *Id.* § 22.011(b)(1), (2). In this case, the trial court included in the jury charge a "without consent of the other person" definition that tracked the language in Section 22.011(b)(1) and (b)(2).

Vivian testified that Appellant slapped her in the face three times when they were in her bedroom. Appellant hit her so hard the third time that she fell to the floor. Vivian said that Appellant dragged her to the living room by her hair and then picked her up by her hair. The State presented detailed evidence that showed the injuries Vivian received as a result of Appellant's use of physical force and violence against her. Vivian testified that Appellant drove to the park and then "forced himself on her." Vivian told Allen that Appellant raped her. Vivian told Corporal Hewitt that Appellant slapped her in the bedroom, that he hit her at the park, and that he threatened to beat her more if she did not have sex with him at the park. Appellant had hit Vivian on prior occasions. Based on the evidence, and viewing it in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt (1) that Appellant compelled Vivian to submit to, or to participate in, the penetration of her sexual organ by the use of physical force or violence or (2) that Appellant compelled Vivian to submit to, or to participate in, the penetration of her sexual organ by threatening to use force or violence against her and that she believed that Appellant had the ability to execute the threat. Therefore, the evidence is sufficient to support a finding that Appellant sexually assaulted Vivian without her consent.

Appellant also contends that the evidence was insufficient to establish that he sexually assaulted Vivian and caused serious bodily injury to her during the same criminal episode. Appellant asserts that the sexual encounter that Vivian said

occurred at the park occurred "much later" than when he allegedly slapped her three times and dragged her by the hair while they were at her house. Based on the time period that elapsed between the two events, Appellant argues that they did not occur during the same criminal episode. However, a criminal episode does not include only the duration of the act of the sexual assault. *Quincy v. State*, 304 S.W.3d 489, 497 (Tex. App.—Amarillo 2009, no pet.); *Burns v. State*, 728 S.W.2d 114, 116 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Rather, the "criminal episode" begins when the attacker in any way restricts the victim's freedom of movement, and it ends with the final release or escape of the victim from the attacker's control. *Quincy*, 304 S.W.3d at 497; *Cruz v. State*, 238 S.W.3d 389, 398 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Burns*, 728 S.W.2d at 116.

Viewing the evidence in the light most favorable to the verdict, Vivian's freedom of movement was first restricted when Appellant slapped her the first time in her bedroom. Appellant slapped her two more times and then dragged her out of the bedroom by her hair. Appellant caused serious bodily injury to Vivian when he struck her in the face. As a result of Appellant striking her head, Vivian sustained a life-threatening subdural hematoma. Vivian believed that, if she tried to run or fight back, Appellant would beat her more. Appellant had hit her on several occasions in the past. At the park, Appellant told Vivian to take off her clothes and to get into the backseat of the car. After Vivian got into the backseat, Appellant sexually assaulted her. After the sexual assault, Vivian drove Appellant to his house. Vivian remained in Appellant's control until he got out of her car at his house. Based on the evidence, a rational trier of fact could have found beyond a reasonable doubt that Appellant caused serious bodily injury to Vivian and sexually assaulted her in the course of the same criminal episode. After viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found all the elements of the offense beyond a

reasonable doubt. Therefore, the evidence is sufficient to support Appellant's conviction. Appellant's first issue is overruled.

*Jury Charge*

Appellant contends that the trial court erred when it included in the jury charge a definition of "without consent" that was not contained in the indictment. At trial, Appellant objected to the jury charge on the ground that the inclusion of a Section 22.011(b)(2) definition in the jury charge created a material variance between the allegations in the indictment and the proof. The trial court overruled Appellant's objection.

In analyzing a complaint of jury charge error, we first determine whether error existed in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If error existed, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo*, 175 S.W.3d at 743–44. When, as here, a defendant properly preserves error, reversal is required if the error caused some harm. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

Section 22.011(b) of the Penal Code defines eleven circumstances in which a sexual assault is "without the consent of the other person." PENAL § 22.011(b)(1)–(11). The same definition of "without the consent of the other person" applies in aggravated sexual assault cases. *See id.* § 22.021(c). The indictment alleged that Appellant intentionally and knowingly caused the penetration of the female sexual organ of Vivian, without the effective consent of Vivian. The indictment did not contain any of the statutory definitions of "without consent" listed in Section 22.011(b). To be sufficient, an indictment need not define a term when a statutory definition for the term is available. *Daniels v. State*, 754 S.W.2d 214, 218 (Tex. Crim. App. 1988); *Ahmad v. State*, 295 S.W.3d 731, 747 (Tex. App.—Fort Worth 2009, pet. ref'd). Usually, "when the terms and

10

elements in the indictment are statutorily defined, the definitions are essentially evidentiary and need not be further alleged in the indictment." *Daniels*, 754 S.W.2d at 218.

In the jury charge in this case, the trial court included an instruction that defined "without the consent of the other person." The instruction was based on the language in Section 22.011(b)(1) and (b)(2) of the Penal Code. The trial court instructed the jury as follows:

> An aggravated sexual assault is without consent of the other person if the defendant compels the other person to submit or participate by the use of physical force or violence, or the actor compels the other person to submit and participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat.

The latter part of the instruction, which related to the threatened use of force or violence, tracked the statutory language in Section 22.011(b)(2).

If a phrase, term, or word that the jury must use to properly resolve an issue is statutorily defined, the trial court must submit the statutory definition to the jury. *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986); *Murphy v. State*, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet.). The trial court's instruction that related to the definition of "without consent of the other person" tracked the statutory definitions in Section 22.011(b)(1) and (b)(2). In its instruction, the trial court included the statutory definitions from the subsections in Section 22.011(b) that were relevant to the jury's resolution of the case. Based on the evidence, the trial court correctly defined "without consent of the other person" in the charge. The trial court's instruction did not create a material variance between the allegations in the indictment and the proof at trial. Therefore, we conclude that error did not exist in the jury charge. Appellant's second issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

TERRY McCALL

JUSTICE

July 25, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.